WOODLAND v MICHIGAN CITIZENS LOBBY

Docket No. 64388. Submitted April 8, 1983, at Lansing.—Decided
    September 13, 1983. Leave to appeal granted, 418 Mich 955.

Plaintiff, Woodland, a partnership, brought an action in the Kent
    Circuit Court against defendant, Michigan Citizens Lobby, a
    Michigan nonprofit corporation, to restrain defendant and its
    officers and agents from soliciting shoppers, gathering signa-
    tures, distributing literature, making speeches, or engaging in
    any other expressive activity upon any of the property owned
    by plaintiff, including the common areas, courtyards, and corri-
    dors of Woodland Mall, a retail shopping center. The court,
    George R. Cook, J., granted a permanent injunction. Defendant
    had been soliciting signatures on initiative petitions. Defendant
    appealed. *Held:*

    The rights surrounding private property ownership, where
    the public is invited on the property for a limited purpose,
    should not be extinguished when the alleged activity involving
    the right to free speech does not comport with the public
    nature of the property. The test to determine whether political
    access to private property should be judicially granted is
    whether the access sought is reasonably related to the limited
    purpose and scope of the owner's invitation to the public to
    enter his private property.

    Affirmed.

    HOOD, J., dissented. He noted that a state constitution may,
    consistent with federal due process requirements, protect the
    exercise of free speech within large private shopping malls and
    would hold that the Michigan Constitution protects the right of
    citizens to circulate initiative petitions in privately owned
    shopping malls. He would reverse.

OPINION OF THE COURT

1. PROPERTY — PUBLIC USE FOR LIMITED PURPOSE — HANDBILLING.
    The rights surrounding private property ownership, where the

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 16A Am Jur 2d, Constitutional Law § 520.
[4] 42 Am Jur 2d, Initiative and Referendum § 27.

public is invited on the property for a limited purpose, should not be extinguished when the alleged activity involving the right to free speech does not comport with the public nature of the property.

2. PROPERTY — PUBLIC USE FOR LIMITED PURPOSE — POLITICAL ACCESS.

The test to determine whether political access to private property should be judicially granted is whether the access sought is reasonably related to the limited purpose and scope of the owner's invitation to the public to enter his private property.

DISSENT BY HOOD, J.

3. CONSTITUTIONAL LAW — FREE SPEECH — SHOPPING MALLS.

*A state constitution may, consistent with federal due process requirements, protect the exercise of free speech within large private shopping malls.*

4. CONSTITUTIONAL LAW — INITIATIVE PETITIONS — SHOPPING MALLS — FREE SPEECH.

*The Michigan Constitution protects the right of citizens to circulate initiative petitions in privately owned shopping malls (Const 1963, art 1, § 5; art 2, § 9).*

*Miro, Miro & Weiner, P.C.* (by *Joseph Aviv*), for plaintiff.

*Peter Linzer,* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and HOOD and T. M. GREEN,* JJ.

D. E. HOLBROOK, JR., P.J. Defendant appeals by right from an order and final judgment of permanent injunction restraining defendant and its officers and agents from soliciting shoppers, gathering signatures, distributing literature, making speeches, or engaging in any other expressive activity upon any of the property owned by plaintiff, including the common areas, courtyards, and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

corridors of Woodland Mall, a retail shopping center located in Kent County.

Plaintiff is the owner and operator of Woodland Mall. The shopping center is enclosed and surrounded by a parking area. The whole of this property is owned by plaintiff. The mall contains three large department stores as well as numerous small stores leased to tenants. Common areas of the mall are maintained by plaintiff to maximize their attractive, restful, and nondisruptive atmosphere. The tenants of Woodland Mall may not solicit business or distribute handbills or any other advertising in the common areas. Additionally, plaintiff has maintained a strict policy prohibiting any activity in Woodland Mall not directly related to the enhancement of commercial retail sales in the shopping center.

On April 1, 1982, plaintiff informed defendant lobby of the above-stated policy; however, defendant's director notified plaintiff's mall manager that on April 3, 1982, from 12:00 to 6:00, five lobby members would enter the mall, place tables and signs in the center of the mall, and solicit shoppers to sign petitions to initiate state legislation. Members of defendant lobby did, in fact, enter Woodland Mall on April 3, 1982. They were met at the entrance by a security guard who informed them that they were not permitted in the shopping center for purposes of solicitation. Nevertheless, they set up tables and signs in the center of the mall and began to solicit customers for signatures. Once again they were informed they were on private property and were asked to leave by plaintiff's mall manager. They refused to so do. Signatures were solicited until 6:00 p.m., when plans were announced to return on April 9th and 10th for the same purpose. On April 6, 1982, plaintiff

filed its complaint and the trial court entered an *ex parte* restraining order against defendant lobby. Following extensive argument, the trial court, on April 15, 1982, issued a preliminary injunction which was made permanent on April 27, 1982.

The issue before us is whether defendant lobby has a right under the Michigan Constitution to trespass on plaintiff's private property for political reasons where the public is invited on plaintiff's property for a limited purpose and defendant's activity does not comport with the public nature of plaintiff's property. We hold defendant does not have such rights and affirm the trial court.

A recent decision by this Court, *Commodities Export Co v Detroit,* 116 Mich App 57; 321 NW2d 842 (1982), is controlling here. Plaintiff, Commodities Export, was a store selling duty-free goods near the entrance to the Ambassador Bridge to Canada. Defendant Ammex also sold duty-free goods in a store in a "plaza" at the foot of the Ambassador Bridge, leased from the bridge's private owner. This "plaza" contained only Ammex's store and a parking lot. Employees of Commodities Export distributed handbills advertising Commodities' prices to customers of Ammex in the parking lot leased by Ammex. Commodities' employees refused to leave when asked and were eventually arrested for trespass.

Thereafter Commodities sought an injunction against Ammex to prevent them from interfering with said distribution. The trial court denied the injunction. Plaintiff argued on appeal that, even if the Ambassador Bridge and the area leased to Ammex were private property, nonetheless, its employees were entitled to distribute handbills pursuant to their right of freedom of speech, guaranteed by the First Amendment to the United

States Constitution and the Michigan Constitution. This Court disagreed and upheld the trial court. We believe the *Commodities* Court clearly established that the Michigan Constitution does not sanction acts of trespass for expressive purposes. In reliance on *Lloyd Corp, Ltd v Tanner,* 407 US 551; 92 S Ct 2219; 33 L Ed 2d 131 (1972), and *Hudgens v NLRB,* 424 US 507; 96 S Ct 1029; 47 L Ed 2d 196 (1976), cases supporting the exclusion of leafleteers from private property, the Court stated:

"We conclude that the *Lloyd* and *Hudgens* cases control this case. The rights surrounding private property ownership, where the public is invited on the property for a limited purpose, cannot be extinguished when the activity does not comport with the public nature of the property." 116 Mich App 67.

We find there is no open-ended invitation to the public to use Woodland Mall for any and all purposes. The public is invited to Woodland Mall for the limited purpose of shopping for retail goods and services. Defendant and its agents did not come to the mall for such purpose, but, rather, against plaintiff's wishes, came to appropriate and utilize plaintiff's private property as a forum to express political views and solicit shoppers in furtherance of such political views. This activity is wholly inconsistent with the scope of invitation extended the public and with plaintiff's use of its private property, thus unwarrantedly diminishing plaintiff's property rights and injuring its business. We find Woodland has made a substantial commitment, both in terms of financial investment and legal obligations, to construct and maintain common areas which are attractive, restful, and non-disruptive to shoppers. Defendant's activity would

irreparably harm this planned peaceful atmosphere.

Defendant seems to suggest that the test for determining whether political access to private property should be granted is based on the size of the property in question and the vitality of nearby business districts. We believe the appropriate test to be whether the access sought is reasonably related to the limited purpose and scope of the owner's invitation to the public to enter his private property. Clearly, in the instant case, the political access sought by the defendant is entirely unrelated to Woodland's limited invitation to the general public to shop in its private property.

Therefore, we hold defendant's conduct to constitute a continuing trespass upon private property contrary to MCL 750.552; MSA 28.820(1). We find defendant's conduct would irreparably harm the business of plaintiff and its tenants, infringing on their constitutionally protected property and contract rights.

Affirmed.

T. M. GREEN, J., concurred.

HOOD, J. (*dissenting*). I must respectfully dissent.

First, I do not agree that *Commodities Export Co v Detroit,* 116 Mich App 57; 321 NW2d 842 (1982), controls the decision in this case. *Commodities* limits its analysis to an inquiry of whether the plaintiff had a right under the United States Constitution's First Amendment to distribute commercial handbills on privately owned property. In this case, we are asked to decide whether the Michigan Constitution, not the First Amendment, protects a citizen's right to petition for a ballot initiative in the public area of a privately owned shopping mall.

The distinction is both legally and factually important. Legally, it is clear that the First Amendment does not protect the right to distribute handbills in a privately owned shopping center because state action denying that right is not involved. *Hudgens v NLRB,* 424 US 507; 96 S Ct 1029; 47 L Ed 2d 196 (1976). However, our appellate courts have not yet addressed the question whether the Michigan Constitution protects such action on private property.

Factually, *Commodities* dealt with the distribution of commercial advertisements in the parking area of a single, privately owned shop. The Court noted in *Commodities,* at 116 Mich App 67-68:

"The rights surrounding private property ownership, where the public is invited on the property for a limited purpose, cannot be extinguished when the activity does not comport with the public nature of the property. *This is especially true where the speech involved is commercial handbilling.*

"In the past, the United States Supreme Court has accorded commercial speech less protection than other forms of constitutionally guaranteed speech. *Central Hudson Gas & Electric Corp v Public Service Comm of New York,* 447 US 557; 100 S Ct 2343; 65 L Ed 2d 341 (1980). Recently, First Amendment protections have been extended to purely commercial speech. *Metromedia, Inc v San Diego,* 453 US 490; 101 S Ct 2882; 69 L Ed 2d 800 (1981). However, in *Metromedia, Inc, supra,* 814, the Supreme Court made it clear that the distinction between commercial and noncommercial speech survives * * *.

"* * * Where decisions hold that even a public authority, against which the First Amendment protections are directed, has the right to reject commercial advertising, surely a private property owner's rights cannot be infringed by allowing unconsented-to commercial advertising on its premises." (Emphasis added.)

However, in this case the defendant attempted to express political speech in the public areas of a large shopping mall, a significantly different setting.

I would hold that the Michigan Constitution does protect defendant's right to solicit signatures for an initiative petition in the public areas of a privately owned shopping mall. I find that federal, Michigan, and other state decisions support such a holding.

In *PruneYard Shopping Center v Robins,* 447 US 74; 100 S Ct 2035; 64 L Ed 2d 741 (1980), the Court held that, although the federal constitution extended no protection to the exercise of the right to free speech within large private shopping malls, the state courts were free to interpret their own constitutions to provide such protection, consistent with federal due process requirements. The Court affirmed *Robins v PruneYard Shopping Center,* 23 Cal 3d 899; 153 Cal Rptr 854; 592 P2d 341 (1979), in which the California Supreme Court held that its state's constitutional provisions regarding free expression permitted a group of high school students to seek signatures for a petition to the United Nations opposing an "Anti-Zionism" resolution within the common areas of a large, privately owned shopping mall.

In its opinion affirming *Robins,* the Supreme Court found that the state court's decision did not violate the due process rights of the mall owners. Although the "right to exclude others" from one's property is a part of the Fifth and Fourteenth Amendment guarantees against taking property without due process and just compensation, before the court would find a compensable "taking" it must inquire into "the character of the governmental action, its economic impact, and its inter-

ference with reasonable investment-backed expectations". *PruneYard, supra,* 447 US 82-83. The mall owners failed to demonstrate that the proposed activity would "impair the value or use of this property as a shopping center". *PruneYard, supra,* 447 US 83. The mall owners did not show that the lower court's decision was unreasonable, arbitrary, or capricious and that the means selected by the court had no real or substantial relation to its objective. Moreover, the state court permitted the mall owners to adopt reasonable time, place, and manner regulations to curtail expressive activities on their property.

In this case, there is even more than the constitutional protection of free speech at issue. Const 1963, art 1, § 5. Our constitution also provides:

"The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum." Const 1963, art 2, § 9.

Thus, in this case we are dealing with not only the freedom of political, as opposed to commercial, speech but this state's constitutional protection of a particular form of political speech: the right of every citizen to initiate law.

In *Amalgamated Clothing Workers of America, AFL-CIO v Wonderland Shopping Center, Inc,* 370 Mich 547, 563, 572-573; 122 NW2d 785 (1963), an equally divided Supreme Court held, in an opinion by Justices BLACK and SMITH, that the First Amendment and *"our even more broadly worded" state constitution* protected a union representative's right to distribute handbills near the entrance of a clothing store in a shopping plaza, warning customers that the store sold nonunion-

made goods. Although *Wonderland* was decided before *Hudgens* and thus is not precedential on the Fifth Amendment claim, its reliance on our state's constitutional protections is still good law. The Court also recognized the special nature of the public areas of modern shopping centers as the equivalent to public markets of earlier days. *Wonderland, supra,* p 568.

With the exception of North Carolina, in *State v Felmut,* 302 NC 173; 273 SE2d 708 (1981), other states have followed the California *Robins* decision and found that their state constitutions protect freedom of political speech in the public areas of privately owned shopping malls or centers. See *Batchelder v Allied Store International, Inc,* 388 Mass 83; 445 NE2d 590 (1983); *Alderwood Associates v Washington Environmental Council,* 96 Wash 2d 230; 635 P2d 108 (1981), and *Cologne v Westfarms Associates,* 37 Conn Supp 90; 442 A2d 471 (1982). New Jersey courts find similar state constitutional rights protected on the property of privately owned colleges. *Commonwealth v Tate,* 495 Pa 158; 432 A2d 1382 (1981); *State v Schmid,* 84 NJ 535; 423 A2d 615 (1980), *app dis* 455 US 100; 102 S Ct 867; 70 L Ed 2d 855 (1982).

Particularly helpful in this case is the *Alderwood* decision. The defendant in *Alderwood,* an environmental group, appealed a lower court ruling that enjoined it from soliciting for signatures on petitions supporting a voter initiative. The Washington Supreme Court reversed, first noting that *PruneYard, supra,* allows individuals to speak or petition in privately owned shopping centers if state law confers such a right and if its exercise does not unreasonably interfere with the private owner's constitutional rights. *Alderwood, supra,* 96 Wash 2d 235. The *Alderwood* court then inter-

preted its own state constitution's broad protection of free speech and its provision that reserved to the people the right to initiate legislation. The *Alderwood* Court noted that the state constitutional provisions did not mention "state action" as necessary to invoke their protections. Thus, those protections could be extended to speech on private property after a balancing of competing rights and other factors. The factors they weighed in the balance were (1) the use and nature of the private property and (2) the nature of the speech activity. As to the first factor, a shopping mall, unlike a single, privately owned store, has public areas the functional equivalent to downtown areas or other public forums. As to the second factor, the exercise of free speech that also involves the initiative process takes on additional constitutional significance. *Alderwood, supra,* 96 Wash 2d 244.

On balance, the *Alderwood* court found that defendant's petitioning, with the plaintiff's right to put time, place, and manner restrictions on that petitioning, did not amount to a taking or infringement on the plaintiff's rights sufficient to uphold a finding of irreparable harm. I would adopt a similar balancing test and analysis in this case and hold that the trial court improperly granted plaintiff a permanent injunction.

Finally, the issue of whether defendant's conduct violated the criminal trespass statute, MCL 750.552; MSA 28.820(1), is not before us in this challenge to the grant of equitable relief and should not be addressed by this Court in this decision.

I would reverse and remand.