203 N.J. Super. 41 (1984)
495 A.2d 900
LUCILLE F. BROWN, ET AL., PLAINTIFFS,
v.
ROGER J. DAVIS AND HAROLD DAVIS T/A DAVIS ENTERPRISES, THE TOWNSHIP OF CHERRY HILL,[*] A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, CHERRY HILL WOMEN'S CENTER, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Camden County.
Decided November 15, 1984.
*42 Daniel F. Steinmetz, Jr. for plaintiffs.
*43 William F. Hyland, Jr. for defendants Roger J. Davis and Harold Davis (Brandt, Houghey, Penberthy, Lewis & Hyland, attorneys).
Sheppard A. Guryan for defendant Cherry Hill Women's Center (Lasser, Hochman, Marcus, Guryan & Kuskin, attorneys).
LOWENGRUB, J.S.C.
At issue is whether private citizens may enter upon the common areas of a multi-business office complex to espouse an anti-abortion thesis directed to prospective patients of one of the tenants without the consent of the landlord-owner.
Defendant, Davis Enterprises (Davis), owns a parcel of land consisting of approximately two acres fronting on New Jersey State Highway 38 at its intersection with Coles Avenue, Cherry Hill, New Jersey, upon which are erected three single story buildings, each occupied by either three or four separate lessees. The buildings are separated by common areas used for parking and vehicular ingress and egress to and from the roadways. Parking spaces are provided between the buildings and at either end of the center. Of the total ground area 26% is used for the buildings, 48% is blacktopped for parking and roads (20% for parking and 28% for roads) and 26% is utilized for plaintings and walks. A free standing sign, visible to traffic on Route 38, identifies the premises as "Avenues of Commerce." Smaller signs, uniform in shape, identifying each office, are located on the front of the buildings above the entrance to each of the leased premises.
Defendant Cherry Hill Women's Center, Inc. (Women's Center), one of the tenants occupying office space in the Avenues of Commerce, is a private medical facility that performs various gynecological services, including abortions. Prospective patients normally visit by appointment, however, no appointment is necessary for a pregnancy test. The other tenants are business enterprises who maintain offices offering services *44 rather than retail sales to the general public. The separate leases permit use of the premises for general offices, storage space, warehouse facilities, wholesale sales and product display.[1] From the evidence adduced at the trial, advertising of the Women's Center consists of listings in the yellow pages of the New Jersey Bell telephone book circulated in the City of Camden, Township of Cherry Hill, Pennsauken Township and vicinity. The Women's Center also places advertisements in newspapers of general circulation in Camden, Burlington and Gloucester counties; college newspapers for colleges located in Burlington County and Camden City; a magazine of general content and circulation; a radio station and a television station, each broadcasting from Philadelphia, Pa.
Plaintiffs presently engage in expressional activity consisting of walking along a right-of-way, owned by the State of New Jersey, parallel to Highway 38, where they carry signs and placards with messages espousing an anti-abortion or right-to-life theme. This right-of-way is approximately 45 to 100 feet from the front entrance to the Women's Center. In addition, plaintiffs call or shout to prospective patients of the Women's Center in an attempt to dissuade them from having an abortion. Defendants do not question plaintiffs' right to engage in such *45 activity on the public right-of-way. However, plaintiffs seek to enter upon the sidewalks and parking areas of the Avenues of Commerce to picket and place literature on cars parked there. Plaintiffs also seek to confront, on a one-on-one basis, prospective users of the Center by meeting them as they exist their vehicles and walking with them to the front door of the Women's Center in order to persuade them not to have an abortion.
On May 26, 1984 Lucille Brown, one of the plaintiffs, entered a parking area of the Avenues of Commerce to place political literature supporting a candidate who favored an anti-abortion policy on a parked automobile. After refusing a request to leave she was arrested and charged with violating N.J.S.A. 2C:18-3 et seq., criminal trespass.
Plaintiffs brought this action to enjoin prosecution in the Cherry Hill Municipal Court against Mrs. Brown; to permit plaintiffs to enter the parking and walk areas of the Avenues of Commerce to vocally express their anti-abortion views and distribute literature without retribution by the defendants; and to enjoin defendants from removing literature which plaintiffs place on motor vehicles parked at the Avenues of Commerce. At trial, plaintiffs' counsel also suggested that the court permit a limited number of demonstrators to enter specific places rather than permitting unlimited access by plaintiffs to the Avenues of Commerce. Plaintiffs allege that the first amendment to the United States Constitution and article I, paragraph 6 of the New Jersey Constitution entitles them to the relief sought. The relevant portions are:
"Congress shall make no law ... abridging the freedom of speech ..." U.S. Const. Amend. I, and
"Every person may freely speak, write and publish his sentiments on all subjects, being responsible for that right ... No law shall be passed to restrain or abridge the liberty of speech or of the press...." [N.J.Const. Art. I, par. 6.]
The constitutional issues presented in this case require the balancing of expressional rights vis a vis property rights. Under the first amendment to the U.S. Constitution, private individuals do not have an unqualified right to engage in speech *46 and assembly on private property. Hudgens v. NLRB, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976); Lloyd Corp. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). However, individuals are entitled to exercise first amendment rights on private property if the property is sufficiently devoted to public use. Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). "The more an owner for his advantage opens up his property to use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." Id. at 506, 66 S.Ct. at 278, 90 L.Ed. at 268. In this case the owner has not sufficiently dedicated the property to public use so as to entitle individuals to access for first amendment activity.
The New Jersey State Constitution has been interpreted more broadly than the Federal Constitution to permit the exercise of expressional rights on private property in certain circumstances. State v. Schmid, 84 N.J. 535 (1980), app. dism. sub nom. Princeton University v. Schmid, 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982). In State v. Schmid, where the defendant sought to distribute political literature on the campus of Princeton University, the court formulated a three prong test to ascertain "... the parameters of the rights of speech and assembly upon privately owned property and the extent to which such property reasonably can be restricted to accomodate" those rights. Id. 84 N.J. at 563. The elements to be considered are "(1) the nature, pruposes, and primary use of such private property, generally, its `normal' use, (2) the extent and nature of the public's invitation to use that property, and (3) the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property." Id. at 563.
The protection of the rights of a private property owner is concomitant to the owner's obligation to honor the *47 rights of others to speak and assemble on his property. In weighing the reasonableness of the owner's restrictions to access to private property, effect must be given to whether "there exist convenient and feasible alternative means to individuals to engage in substantially the same expressional activity." Schmid at 563.
In applying the Schmid test to this case, the credible evidence relevant to the first prong clearly shows that space is neither provided for nor available to pedestrians to congregate in and about the premises. The premises consist of approximately two acres of which 26% is used for the buildings occupied by tenants and 48% for vehicle traffic and parking. The remaining 26% is used for plantings and walks. The Avenues of Commerce is not the functional equivilant of a suburban shopping center, which may be characterized as an alternative to an urban downtown shopping area where the public at large is invited. The Center is normally used by employees of tenants and prospective customers visiting specific businesses for the limited services made available to them. It is not a place to which a general consumer would go to shop for personal, household or general business merchandise.
The preponderance of the credible evidence relevant to the second prong of the Schmid test shows there are advertisements which call attention to the Avenues of Commerce as a location where specific services are rendered and there are signs on the front of each business premises identifying the occupant. However, the advertisements and signs do not amount to a general invitation to the public at large to enter upon the premises. The advertisements for the Women's Center provide that appointments are necessary except that pregnancy testing may be administered on a "walk-in" basis.
With regard to the third factor of the Schmid test, the record is perfectly clear that the purpose of the expressional activity *48 plaintiffs seek to engage in is incompatible with some of the services rendered by the Women's Center. As explained in Schmid, "the further question is whether the expressional activities undertaken by the [plaintiffs] ... are discordant in any sense with both the private and public uses ..." of the property. Schmid at 565. The Schmid Court found that the dissemination of political material by defendant Schmid was not incompatible with Princeton University's professed educational goals or use of its property for educational purposes and there was no indication that Schmid's activities disrupted University operations, or significantly infringed on the rights of others, or caused any interference or inconvenience with respect to the normal use of the University property. Schmid at 565-66.
Although defendants produced no evidence that any prospective user of the services offered by the Women's Center was offended, intimidated, or refused to receive medical services as a result of plaintiffs' conduct, there was credible testimony that females attired in white uniforms met some prospective patients of the Women's Center as they exited their cars and escorted them to the front door of the Women's Center. Surely that activity is not that which the provider of gynocological services normally supplies to patients. The escort service was intended to counter the effects of plaintiffs' expressional activity. Defendants do not object to the present conduct of plaintiffs as they make use of the State right-of-way. However, any expansion of the area where that activity may be engaged in would be incompatible with the right of the tenant Women's Center to receive and the owner to provide peaceable possession and quiet enjoyment of the leased premises. See Reste Realty Corp. v. Cooper, 53 N.J. 444, 456 (1969).
Individuals have been permitted to engage in political speech or endeavor to obtain signatures on petitions for political purposes in large shopping centers. PruneYard Shopping Center *49 v. Robins, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); Batchelder v. Allied Stores International, Inc., 388 Mass. 83, 445 N.E.2d 590 (1983); Alderwood Associates v. Washington Environmental Council, 96 Wash.2d 230, 635 P.2d 108 (1981). Contra Cologne v. Westfarms Associates, 192 Conn. 48, 469 A.2d 1201 (1984); Woodland v. Michigan Citizens Lobby, 128 Mich. App. 649, 341 N.W.2d 174 (1983); State v. Felmet, 302 N.C. 173, 273 S.E.2d 708 (1981). However, in PruneYard, the California Supreme Court specifically noted that it was not considering property or privacy rights of a proprietor of a modest retail establishment but a center where 25,000 people were induced to congregate daily and the expressional activities would not interfere with the owner's property rights. PruneYard, 23 Cal.3d 899, 910-11, 592 P.2d 341, 347-48, 153 Cal. Rptr. 854, 860 (1979). Individuals have also been permitted to engage in expressional activity on a university campus. Schmid, supra; Commonwealth v. Tate, 495 Pa. 158, 432 A.2d 1382 (1981).
In the present case there is no pressing public policy reason for permitting plaintiffs to enter the premises, since alternative means of communication are available. See State v. Shack, 58 N.J. 297, 302 (1971) (ownership of real property does not include right to bar access to governmental services available to migrant workers). Nor are the defendants governed by any state regulations that would prohibit them from restricting the plaintiffs. See Uston v. Resorts International Hotel, Inc., 89 N.J. 163, 167 (1982) (Casino Control Act prohibited casino from restricting card counters). Absent special considerations, which I do not find exist in this case, plaintiffs are not entitled to enter defendants' private property against defendants' wishes to engage in the described expressional activity.
Counsel for defendant, Women's Center, shall submit an appropriate form of judgment in accordance with the provisions of R. 4:42-1(b).
NOTES
[*] Suit against Tp. of Cherry Hill was voluntarily dismissed.
[1] The following is a list of all tenants located at the Avenues of Commerce; the use of the premises as permitted by the individual lease agreements; and the total area in square feet that each tenant occupies:

 Raychem Corporation  office, storage & product display 1350 sq. ft.
 Patsy Corporation  office, storage & wholesale sales 800 sq. ft.
 Honeywell, Inc.  alarm terminal & sales office 560 sq. ft.
 G.S. Edwards  office & warehouse 2450 sq. ft.
 Fleet Finance, Inc.  general offices 800 sq. ft.
 D. and D. Equipment Service Co.  office & warehouse 2000 sq. ft.
 Megargel/Himmelstein Associates, Inc.  storage & office 800 sq. ft.
 Medical Termography Associates  medical offices 1500 sq. ft.
 Energy Management Consultants, Inc.  office 1500 sq. ft.
 Cherry Hill Women's Center, Inc.  medical offices 3000 sq. ft.