204 N.J. Super. 531 (1985)
499 A.2d 535
PLANNED PARENTHOOD OF MONMOUTH COUNTY, INC., PLAINTIFF,
v.
MAUREEN P. CANNIZZARO, MARY FLYNN, AMANDA FANSLER, JOANNE M. FISHER, JOHN T. HEMHAUSER, MARY GANS, OLIVIA GANS, JULIANN GANS, MONA JONES, ROBERT DOW, MARY KAY SMITH, NEW JERSEY RIGHT TO LIFE COMMITTEE, MONMOUTH COUNTY RIGHT TO LIFE COMMITTEE, SHIELD OF ROSES, AND Y.Y., A FICTITIOUS NAME FOR ALL PERSONS OR ORGANIZATIONS ACTING IN CONCERT WITH THE NAMED DEFENDANTS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Monmouth County.
Argued March 25, 1985.
Decided May 2, 1985.
*532 Richard B. Ansell for plaintiff (Anschelwitz, Barr, Ansell & Bonello, attorneys).
William F. Dowd for individual defendants Cannizzaro, Flynn, Fansler, Fisher, Hemhauser, Mary Gans, Olivia Gans, Julian Gans, Jones, Dow and Smith (Hanlon, McHeffey & Donnington, attorneys).
Richard J, Traynor for defendant Monmouth County Right to Life Committee (Traynor & Hogan, attorneys).
Robert A. Baron for defendant New Jersey Right to Life Committee, Inc., (Baron & Baron, for attorneys).
SELIKOFF, J.S.C.
This matter requires the Court to resolve a classic dispute: What is the equipose between the rights of freedom of speech and assembly, guaranteed by our State Constitution, when balanced against similarly guaranteed rights of privacy and property?
An Order to Show Cause with Verified Complaint seeking restraints was filed on June 1, 1984 by plaintiff Planned Parenthood of Monmouth County, Inc. A Temporary Restraining Order was signed, which required in part that defendants and:
all persons or organizations acting in concert or combination with the named defendants, desist and refrain from invading or trespassing upon the property of the Plaintiff known as 69 East Newman Springs Road, Shrewsbury, New Jersey; from gathering, parading, patrolling and picketing the property of the Plaintiff in such a manner as to disrupt, intimidate or harass the executive staff, employees or patients of the Plaintiff and specifically from using obscene or abusive language or insults or epithets directed at the PLANNED PARENTHOOD's medical and executive staff or at patients desiring to use their professional services and at their employees and refrain from making loud accusations and shouting statements which are abusive at the aforesaid staff, physicians or patients; from intentionally interferring with the flow of traffic into and out of the Plaintiff's premises by blocking or obstructing ingress into *533 or egress from same. The pickets may picket or patrol on the sidewalk or streets abutting the Plaintiff's premises with five (5) feet between pickets.
On August 1, 1984, the United States District Court for the District of New Jersey determined it lacked subject matter jurisdiction and remanded the matter to this Court. The individual defendants answered the Complaint on August 10, 1984. Defendant Monmouth County Right to Life Committee, Inc. answered on August 13, 1984. Defendant New Jersey Right to Life Committee, Inc. answered on August 17, 1984. Orders were entered subsequently, which continued restraints until a Plenary Hearing could be held. The Plenary Hearing commenced on March 19, 1985. At its conclusion, the Complaint was dismissed as to defendant New Jersey Right to Life Committee, Inc. R. 4:40-1.
Four witnesses testified on behalf of plaintiff. Among them were the Executive Director of Planned Parenthood, two of its employees, and the owner of the real property situated diagonally to the west of plaintiff's property. Five of the named defendants also testified. The essential facts are not in dispute. Planned Parenthood is a voluntary non-profit private health agency, which is the sole occupant and owner of property located at 69 East Newman Springs Road, Red Bank, New Jersey. Among the number of different services provided by plaintiff during the past ten years are pregnancy testing; breast testing; gynocological examinations; education programs for its clientele; PAP smears; venereal disease testing; diabetes testing; training programs for counsellors and volunteers; pregnancy counselling and first trimester pregnancy terminations, otherwise known as abortions.
Although plaintiff is a private entity, it accepts a certain amount of public grant funds. Plaintiff obtains approximately 50 per cent of its funding from Federal, State and County governments. In the past year alone, plaintiff has received approximately $36,000.00 from the County of Monmouth. These grants, however, are earmarked for specific purposes. The Federal funds are utilized by plaintiff for providing its *534 contraceptive services while the funds from the County of Monmouth are used exclusively for providing community education services pursuant to the terms of the grant. In addition to receiving public grants, plaintiff enjoys a preferred tax status as a non-profit organization.
There are two entrances to the Planned Parenthood facility. One is from the private parking lot situated on plaintiff's property at the rear of the building. Access to that parking lot is from a side street, Haddon Place. There is also an entrance to the building that fronts the public sidewalk on East Newman Springs Road. Most of the clients and employees of Planned Parenthood arrive at the building by automobile. There are a small number of people who access the facility by walking or by taking public transportation. The principal entrance to the facility is from the parking lot at the rear of the building.
There is no doubt that the defendants, individually, and as a group, are sincere in their beliefs regarding abortion. Defendants have been actively picketing the Planned Parenthood facility over a period of some five to six years. The Court finds that the defendants' picketing is conducted on a regular basis. While I recognize that some organizations and individuals who are not named defendants have participated in the picketing at the Planned Parenthood facility, I find that all picketing activity is actively coordinated and supervised under the organized direction of the defendant Monmouth County Right to Life Committee.
The bulk of the picketing activity over the past few years has been conducted at the rear of the plaintiff's building. There has also been a limited amount of picketing on the sidewalk in front of the premises on Newman Springs Road. Picketers have not only paraded with signs but they have also engaged in loud shouting. Both the shouters and signs have referred to the employees of Planned Parenthood as "murderers". People have been exhorted to stop plaintiff from "killing babies". The Executive Director of Planned Parenthood testified that on *535 more than one occasion, she was taunted as the "lamp shade lady" by picketers, presumably making a grotesque comparison to Holocaust atrocities. The witness stated she was particularly upset because she is Jewish. Potential clients of Planned Parenthood have been accosted and exhorted by defendants not to enter the premises but rather to stop and listen to their positions on abortion.
Prior to the Temporary Restraining Order of June 1, 1984, defendants roamed freely about the plaintiff's property, placing leaflets onto automobiles and enlisting anyone who would listen to their point of view. On one occasion, several defendants entered the plaintiff's building, ostensibly to make an appointment for the rendering of services. A shouting and shoving match ensued and the picketers had to be forcibly ejected from the premises.
Plaintiff contends that it is entitled to permanent injunctive relief because its private property is being trespassed upon by defendants; that it has standing to assert the privacy rights of those who would be its clients; that it is a private entity and thus not subject to the strictures imposed by the Federal and State Constitutions regarding acquiesence to the picketers' activities.
Defendants argue that the Planned Parenthood facility is a public facility. As such, defendants assert that their expressional activity must be afforded the broadest measure of protection by the State and Federal Constitutions.
Initially, the issue of plaintiff's standing must be addressed. The right of privacy is constitutionally guaranteed and protected by both the Federal and State Constitutions. See Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right of privacy among penumbra of rights guaranteed by Federal Constitution), and Right To Choose v. Bryne, 91 N.J. 287 (1982) (right of privacy is protected in a variety of areas by New Jersey Constitution).
*536 In Griswold, the Supreme Court held, among other things, that doctors had standing to raise the constitutional rights of married persons with whom they had a professional relationship. Plaintiff correctly argues that as the employer of its staff members and as the provider of services to its clientele, it has standing to assert their legal claims. It is now well settled that New Jersey Courts may "hold that where the plaintiff is not simply an interloper and the proceeding serves the public interest, standing will be found." In re Quinlan, 70 N.J. 10, 35 (1976), cert. den., 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976).
It would not be realistic to expect that each individual client, each individual staff member, each individual physician must institute a separate action to protect their rights of privacy. I find that both parts of the Quinlan standing test are met and that Planned Parenthood may assert the privacy rights of its personnel and clients.
Both plaintiff and defendants readily concede that the substantive issues can be resolved by the test set forth in State v. Schmid, 84 N.J. 535 (1980). There, Princeton University prosecuted Schmid for distributing and selling political materials on its main campus contrary to a no solicitation regulation. Schmid was convicted of trespass and appealed. Our Supreme Court reversed the conviction on the basis of provisions in the New Jersey Constitution.
The Schmid decision is particularly applicable to the matter now before the Court. There, our Supreme Court stated that the reason it relied upon the New Jersey Constitution was because "the rights of speech and assembly guaranteed by the State Constitution are protectable not only against governmental or public bodies, but under some circumstances against private persons as well." Id. at 559. Schmid further notes correctly that when a New Jersey Court is interpreting our State Constitution, it is not constrained by the principles of federalism. "Federal requirements concerning state action, *537 found primarily in the language of the Fourteenth Amendment and in principles of Federal-State relations, do not have the same force when applied to State based constitutional rights." Id. at 559-560. It is now well settled that our State Constitution may be interpreted to expand upon the rights and freedoms guaranteed by the Federal Constitution. See Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); Pruneyard Shopping Center v. Robins, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); State v. Hunt, 91 N.J. 338 (1982); and Right to Choose v. Byrne, 91 N.J. 287 (1982).
In deciding this matter, the Court places exclusive reliance upon the rights and privileges guaranteed under the New Jersey Constitution and its separate and independent progeny of caselaw. Reference to the Federal Constitution and caselaw is made only for the purpose of guidance. Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (United States Supreme Court will not review judgments of a state court resting on adequate and independent state grounds if the state court makes clear that the Federal cases being used do not themselves compel the result reached).
The Schmid decision explains how the actions of a private entity might give rise to unreasonable or oppressive restrictions upon the liberty of speech. "[A]s private property becomes, on a sliding scale, committed either more or less to public use and enjoyment, there is actuated, in effect, a counterbalancing between expressional and property rights." State v. Schmid, 84 N.J. at 561. The degree to which private property is devoted to public use has been characterized as a "predicate finding that must be made in all cases before a Court may weigh whether a particular expressional activity must be accommodated" by the private property owner. Bellemead Dev. Corp. v. Schneider, 193 N.J. Super. 85 (Ch.Div. 1983), aff'd, 196 N.J. Super. 571, 574 (App.Div. 1984).
*538 The Appellate Division in Bellemead upheld an order enjoining union members from distributing solicitation leaflets to non-union office members upon the private sidewalks of the plaintiff/landlord. The Bellemead trial court had made an initial determination under the sliding scale test that plaintiff's property was not devoted to any public use whatsoever. Bellemead, supra, 193 N.J. Super. at 93-94. The Trial Court thereafter applied the three part accommodation test set forth in Schmid. The Appellate Division decided that method of analysis was not necessary because the property owners had "not devoted their property to any public use." Bellemead, supra, 196 N.J. Super. at 575.
In making the predicate application of the sliding scale test, I find that plaintiff is a private entity but that this case is distinguishable from both Bellemead opinions. There the evidence adduced at trial demonstrated that the subject property was exclusively private. Here the Court is confronted with the additional evidence that plaintiff, a private entity, receives public funds in the form of grants. I read Bellemead to state that if it is patently obvious after a predicate application of the sliding scale test that the subject property is exclusively private, only then the Court need not undertake an analysis of the rights of the parties under the three part accommodation test. See, e.g., Brown v. Davis, 203 N.J. Super. 41 (Ch.Div. 1985).
In Brown, a trial court applied the accommodation test to a case involving anti-abortion protesters who had picketed a private office building, part of which was occupied by a defendant-tenant who performed abortions. The trial court decided that the property in question was private when the predicate findings of the sliding scale test revealed that "the owner ha[d] not sufficiently dedicated the property to the public use so as to entitle individuals to access for First Amendment activity." Id. at 903 [emphasis supplied]. The Brown court found that the subject property was "private" for purposes of the sliding *539 scale test yet reached an analysis of all the parties' rights under the Schmid accommodation test.
We therefore have arrived at the point where this Court must analyze and apply the accommodation standards set forth in Schmid to the facts in this case. In Schmid, our Supreme Court held:
that under the State Constitution, the test to be applied to ascertain the parameters of the rights of speech and assembly upon privately owned property and the extent to which such rights involves several elements. This standard must take into account (1) the nature, purposes and primary use of such private property, generally, its "normal" use; (2) the extent and nature of the public's invitation to use that property; and (3) the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property. This is a multi-faceted test which must be applied to ascertain whether in a given case owners of private property may be required to permit, subject to suitable restrictions, the reasonable exercise by individuals of the constitutional freedoms of speech and assembly. [Schmid, supra, 84 N.J. at 563, 423 A.2d 615.]
In applying the first prong of the accommodation test, it is clear that plaintiff's normal use of the property is to provide a variety of health services to members of the general public who wish to avail themselves of those services. Although members of the general public use plaintiff's property, their purpose in visiting plaintiff's facility is certainly personal and private. I can think of nothing more personal and private than the various testing and services which are performed for women at plaintiff's facility.
The right of privacy guaranteed by our State Constitution is found at N.J.Const. (1947) Art. 1, Par. 1:
Natural and Unalienable Rights
1. All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.
Cases relied upon which find that this section of our State Constitution is an analogue to the privacy rights found in the Federal Constitution are Right to Choose v. Byrne, 91 N.J. at 287, and State v. Saunders, 75 N.J. 200 (1977). Right to Choose *540 reviews the extensive and independent body of New Jersey case law on the subject of a woman's choice to have an abortion:
In recent years, moreover, a body of law has developed in New Jersey, acknowledging a woman's right to choose whether to carry a pregnancy to full-term or to undergo an abortion. Even before Roe v. Wade, [410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)], this Court intimidated that a woman who had contracted rubella during her pregnancy had a right to choose whether to give birth to a defective child or undergo an abortion. See Gleitman v. Cosgrove, 49 N.J. 22 [227 A.2d 689] (1967) (Weintraub, C.J., dissenting in part). That intimation became a reality in Berman v. Allen [Allan], 80 N.J. 421, 432 [404 A.2d 8] (1979), in which the Court held that a woman had a cause of action for deprivation of the right to decide whether to bear a child with Down's Syndrome. We reaffirmed that right last year in Schroeder v. Perkel, 87 N.J. 53, 66 [432 A.2d 834] (1981), holding that a mother, after giving birth to a child with cystic fibrosis, had a right to choose whether to conceive a second child who might suffer from the same genetic defect. See Comras v. Lewis, 183 N.J. Super. 42 [443 A.2d 229] (App.Div. 1981) (Negligent deprivation of right to choose to abort). See also Doe v. Bridgeton Hospital Ass'n., Inc., 71 N.J. 478 [366 A.2d 641] (1976) (Private non-profit hospital may not use moral concepts to limit common law right of access to quasi-public hospital facilities for elective abortion).
Although we decline to proceed as far as the Chancery Division in declaring that the New Jersey Constitution guarantees a fundamental right to health, Right to Choose II, supra, we recognize that New Jersey accords a high priority to the preservation of health. [Right To Choose, supra, 91 N.J. at 303-304, 450 A.2d 925.]
A compelling analysis of the right of privacy in New Jersey and its origin in the common law has been set forth by Justice Schreiber in State v. Saunders, 75 N.J. at 224-228 (Schreiber, J., concurring). I am quite satisfied that because private property and the right of privacy is clearly involved, plaintiff has met the first standard of the Schmid test.
Insofar as the extent and nature of the public's invitation to use plaintiff's property, that invitation is clearly for private and personal purposes. It is not an invitation as a group to use the property as one would understand a public invitation to use, for example, a public hall or park for recreational purposes. This is a private facility partially funded by public money for purposes which are clearly personal and private. Plaintiff has also met the second standard of the Schmid test.
*541 The third prong considers the purpose of the expressional activity upon the property in relation to its public and private use. Here, of course, it is quite clear that the expressional activity undertaken by the defendants is directed to one particular activity conducted upon plaintiff's property. This aspect of the test would favor defendants.
As this is a court of original jurisdiction, the tests set forth in Schmid must be strictly applied. I find that neither all of plaintiff's position nor all of defendants' position can be accepted entirely because both have a legitimate legal posture in this matter. The Court is, therefore, obligated to balance the rights of both parties in order to determine who must prevail.
Here, the first two Schmid factors are more favorable to plaintiff while the third factor favors defendants. In finding for plaintiff, it must be emphasized that the Court is applying a balance test. The sum of favorable factors is not what counts. It is the quality of each factor, weighed together, which forms the basis of the Court's opinion. See Bellemead, 193 N.J. Super. at 98-99. Here the Court merely finds that when the plaintiff's property rights and the privacy rights of the plaintiff's clients are weighed against the defendants' expressional activity, plaintiff must prevail.
There is no doubt that the free flow of ideas is of immense value to an open society. Free speech is a right that must be jealously guarded and preserved in our society. See U.S. v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). As stated by Judge Lane when confronted with deciding the validity of an ordinance restricting Sunday parades, "the Constitutional right of free speech and assembly cannot be abridged simply because others may take offense at what is being said or advocated and create a disturbance." Hurwitz v. Boyle, 117 N.J. Super. 196, 202 (App.Div. 1971). It must also be remembered, however, that "the rights of free speech do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. Id. at 201. In *542 Brown, the Court found no evidence that any prospective user of the subject property was offended or intimidated. Brown, at 904. The evidence presented here is quite to the contrary. The cross-examination of one of the plaintiff's witnesses is illustrative:
Q: Okay, I'm sorry. You just told the Court that you make an effort to be pleasant to the pickets.
A: I say good morning.
Q: And they say good morning to you?
A: That is not jostling, that's just saying good morning.
Q: It's heart felt and sincere and it's friendly? You certainly aren't being false when you say "Good Morning"?
A: How about accepting. I'll take that word.
Q: You're being a gentle woman when you say good morning?
A: That's correct.
Q: With people whom you disagree and people you really wish weren't there, isn't that correct?
A: I believe firmly they have a right to be there and doing what they are doing as long as they don't infringe on the rights of the rest of us and I believe that they are infringing on the rights of the rest of us when they do certain things.
Q: When they come on to the parking lot?
A: When they trespass on our property. Certainly when they try to disrupt our clinics and certainly when they shout what I consider to be abusive remarks to alot of people who are involved in Planned Parenthood that are not just trying to change their minds, but they are laying heavy, heavy guilt trips on all of us that are unfounded and they are insulting. They can be very insulting.
Reasonable restraints can be placed upon the exercise of free speech and assembly not so as to deprive the defendants of their basic rights but to keep them from infringing upon the rights of others. Guidance in this regard can be found in Heffron v. Int'l Society For Krishna Consciousness, Inc., 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). There, the United States Supreme Court reminds us that expressional activities protected by the Constitution "are subject to reasonable time, place and manner of restrictions." Id. at 647, 101 S.Ct. at 2563.
In Rouse Philadelphia, Inc. v. Ad Hoc '78, 274 Pa.Super. 54, 417 A.2d 1248, 1249 (Pa. Super. Ct. 1979), cert. den., 449 U.S. *543 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980), a Pennsylvania Court was confronted with a set of issues similar to this matter. Picketers had demonstrated at a downtown shopping mall protesting the use of public funds for its construction. A Court Order restraining the pickets' activities was argued to be unconstitutional because it violated the protesters' rights to freedom of expression. The Appellate Court upheld the Trial Court order noting:
As a person's activities move away from pure speech and into the area of expressive conduct they require less constitutional protection. As the mode of expression moves from the printed page or from pure speech to the commission of public acts the scope of permissible regulation of such expression increases.
* * * * * * * *
The closing of private business by blocking the entrances thereto with the avowed purpose of bankrupting those businesses, loud abusive language including the use of obscenities and racial slurs, physical intimidation of patrons and store owners, and the setting afire of trash receptables in a densely populated, downtown, commercial area are all activities which cannot be justified by the Appellants' claims that they did these things in order to protest the allocation of government funds to one area rather than to another." Rouse Philadelphia, Inc., 417 A.2d at 1254 [Emphasis in original].
Here, the Court has found that the method of defendants' expressional activity interferes with plaintiff's rights. There has been diminished access to plaintiff's private property. Defendants' shouting is intimidating and harassing to personnel and patrons of Planned Parenthood. Taking all of these factors into consideration, it is:
ORDERED that defendants, Maureen P. Cannizzaro, Mary Flynn, Joanne M. Fisher, John Hemhauser, Mary Gans, Olivia Gans, Juliann Gans, Mona Jones, Robert Dow, Mary Kay Smith, Monmouth County Right to Life Committee and X, Y and Z, Fictitious Names For All Persons Acting Individually Or In Concert With The Aforementioned Defendants, be and the same hereby are permanently enjoined and restrained from entering upon the property of Planned Parenthood of Monmouth County, Inc., located at 59-69 Newman Springs Road, Shrewsbury, New Jersey, including the parking lot of said premises; and
IT IS FURTHER ORDERED that the aforementioned defendants may picket on the sidewalks abutting the property of the Plaintiff, but in so doing, the aforementioned Defendants shall not obstruct vehicular or pedestrian access to the property nor picket upon or across the driveway aprons; not withstanding *544 defendants' right to cross driveway apron to get from one sidewalk to the other; and
IT IS FURTHER ORDERED that the aforementioned Defendants are permanently enjoined and restrained from disrupting, intimidating or harassing persons frequenting the premises of the Plaintiff; and
IT IS FURTHER ORDERED that the aforementioned Defendants are permanently enjoined and restrained from making loud and shouted verbal communications, of the nature of but not limited to statements such as "They murder babies here" and other similar statements, and from using any mechanical amplification device for verbal communications; and
IT IS FURTHER ORDERED that the aforementioned Defendants, and any other persons picketing, whether singly or in pairs, shall maintain a distance of at least five (5) feet between each picket on Newman Springs Road; and
IT IS FURTHER ORDERED that the aforementioned Defendants are permanently enjoined and restrained from leafletting automobiles on Plaintiff's property; and
IT IS FURTHER ORDERED that the Complaint be and the same is hereby dismissed as to Defendant, New Jersey Right to Life Committee, without costs.