193 N.J. Super. 85 (1983)
472 A.2d 170
BELLEMEAD DEVELOPMENT CORPORATION; BELLEMEAD MANAGEMENT CO., INC., PLAINTIFFS,
v.
DEBORAH SCHNEIDER, INDIVIDUALLY AND AS AN ORGANIZER OF LOCAL 59, PROFESSIONAL OFFICE WORKERS OF NEW JERSEY, ILGWU/AFL-CIO; LOCAL 59, PROFESSIONAL OFFICE WORKERS OF NEW JERSEY, ILGWU/AFL-CIO; AND JOHN DOE AND JANE DOE, SAID NAMES BEING FICTITIOUS, THEIR TRUE NAMES BEING UNKNOWN TO PLAINTIFFS, SUCH PERSONS BEING OFFICERS, AGENTS, REPRESENTATIVES, MEMBERS AND/OR EMPLOYEES OF THE ABOVE-NAMED ORGANIZATION, AND OTHERS IN ACTIVE CONCERT OR PARTICIPATION WITH IT, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Bergen County.
October 6, 1983.
*89 Barry Asen and Joel Finger, members of the New York Bar for plaintiffs (Roberts & Finger, attorneys; Walder, Sondak, Berkeley & Brogan, attorneys, of counsel).
Bennett D. Zurofsky, for defendants (Reitman, Parsonnet, Maisel & Duggan, attorneys).
LESTER, J.S.C.
This case of first impression presents the issue of whether and to what extent the owner of a private office building may exclude union members from distributing solicitation leaflets in front of the buildings on private sidewalks. Our Supreme Court has addressed similar issues concerning a private university, *90 State v. Schmid, 84 N.J. 535 (1980), and a private gambling casino, Uston v. Resorts International Hotel, Inc., 89 N.J. 163 (1982), but has never addressed the issue in relation to a group of private buildings in an office park as herein presented.

I FACTS
Plaintiffs own, directly or indirectly, five lots with the buildings located thereon within the Meadowlands Corporate Center in Lyndhurst. The Meadowlands Corporate Center (the center) is a development consisting of at least six office buildings, several warehouses, a motel, an automobile dealer, and an athletic club. While plaintiffs own, directly or indirectly, a large portion of the property in the center, this litigation involves only five office buildings.
Two of the five buildings are in one area and the other three are located some distance away but within the center. The buildings within each of the two groups are adjacent to one another and some share parking lots. Space within the five buildings is rented to approximately forty corporate tenants whose use is limited by lease almost exclusively to executive, general, and administrative offices as well as corporate headquarters. One of the buildings houses a restaurant, cocktail lounge and supporting facilities and another recently has rented space to a take-out delicatessen which will prepare and sell sandwiches at lunchtime. (The latter will have no tables for customers). Other than the two food vendors, no other tenant engages in retail activities on the subject premises. The various pieces of real estate on which the buildings are situated are privately owned. The privately owned land includes adjacent parking lots, grassy areas, and most sidewalks. The area containing the five buildings fronts on public streets. Some public sidewalks are adjacent to the public streets. The parties have stipulated that more employees come to the Meadowlands Corporate Center by car than by bus. Plaintiff conceeds that *91 defendants may distribute leaflets on the public streets and sidewalks.
Posted at the entrances of the driveways leading into the property and parking lots of each of the five buildings is a sign which states, "Solicitation, distribution of literature or trespassing by nonemployees on these premises is prohibited." On the door of each building is a sign which states,
No soliciting, distributing of any literature or vending of any products is permitted in this building. All violations will be prosecuted!! Bellemead Management Co., Inc.
The corporate secretary and house counsel of plaintiffs testified that plaintiffs do not invite the public to come onto the property. Only tenants, tenants' employees, and invitees, as well as plaintiffs' employees and contractors are so permitted. He further testified that plaintiffs have a policy against advertising on the properties.
Defendants are attempting to unionize nonmanagerial office workers employed by plaintiffs' tenants. On eight days during November 1982 through February 1983, defendant Schneider and other representatives of defendant Local 59 entered on the five properties, without plaintiffs' permission, stood near the doorway of the buildings, and distributed leaflets to persons entering and exiting the buildings. Plaintiffs responded on all but three of those days by informing defendants that they were on private property, and that they would have to leave. The police were called several times and on one occasion plaintiffs filed a criminal trespass complaint in Lyndhurst Municipal Court which was later dismissed for lack of prosecution. Despite written demand by plaintiffs' counsel to defendant to cease trespassing, defendants have continued to come onto the property without plaintiffs' permission.
Plaintiffs commenced this suit by order to show cause seeking a preliminary injunction on the return date enjoining defendants from trespassing upon the subject property. The complaint alleges continuing unlawful trespass and nuisance. Defendants answered, claiming as defenses, inter alia, that their activities *92 are protected by the New Jersey Constitution's provisions protecting free speech and the right to organize, as well as by the Anti-Injunction Act, N.J.S.A. 2A:15-51. Finally, defendants counterclaimed for an injunction preventing plaintiffs from interfering, in any way, with defendants' rights to distribute leaflets on plaintiffs' property. On the return date of the order to show cause, counsel and the court agreed to forego the hearing on the preliminary injunction application and to set a short date for a trial on all issues. The trial is completed.

II DISCUSSION

A. Constitutional Questions
This case requires the court to resolve a classic constitutional dispute and maintain what the Supreme Court has labeled "the ... constitutional equipoise between expressional rights and property rights." State v. Schmid, supra, 84 N.J. at 561. Under the United States Constitution defendants would be barred from distributing leaflets on plaintiffs' private property.[1]See Hudgens v. NLRB, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976); Lloyd Corp. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). Nevertheless, in accordance with Prune Yard Shopping Center v. Robins, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), our Supreme Court has interpreted the New Jersey Constitution more broadly than the Federal Constitution by allowing the exercise of expressional rights on private property in certain circumstances. State v. Schmid, supra, 84 N.J. at 553-564.
In Schmid the court established a sliding scale standard to strike the necessary balance between private-property interests and expressional rights. The court stated "that the more private property is devoted to public use, the more it must accommodate the rights which inhere in individual members of the general public who use that property." Id. at 562. A *93 three-part test was established for application of the sliding scale. The Court is to look to:
(1) the nature, purpose, and primary use of such private property, generally its "normal" use, (2) the extent and nature of the public's invitation to use that property, and (3) the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property. [Id. at 563]
The Court in Schmid held that defendant could distribute and sell political materials on the campus of Princeton University without the latter's permission. Utilizing the three-part test, the Court found that since one of Princeton's primary purposes was to encourage open expression and thought, defendant's activities were consistent with the normal use of the property, and evidenced the fact that Princeton did invite public use of its resources in order to fulfill its educational goal. Finally, the Court found that defendants' expressional activities were neither discordant nor incompatible with Princeton's use of its property.
The second major case in New Jersey dealing with the private property  expressional rights conflict is Uston v. Resorts International Hotel, Inc., supra, in which defendant Resorts sought to exclude plaintiff, a renowned card counter, from the casino. Rejecting defendant's argument that it could exclude anyone for any reason, the Court cited Schmid as recognizing "that when property owners open their premises to the general public in the pursuit of their own property interests, they have no right to exclude people unreasonably." Id. at 173. Furthermore, "[p]roperty owners have no legitimate interest in unreasonably excluding particular members of the public when they open their premises for public use." Ibid.
The facts of the instant case contrast those of Schmid and Uston, where the property owners either encouraged public dialogue on their premises or invited the public to enter onto the property to transact commercial business. Plaintiffs here discourage public use of their property and seek to limit, to the fullest extent possible, public access. Plaintiff's policy in this regard is quite clear, only tenants, their employees, and invitees *94 are permitted on the property. In fact, tenants' leases specifically limit use of the property to general office purposes.
The instant case also differs from cases reported in other states. The reported cases outside of New Jersey involve either shopping malls, see Cologne v. Westfarms Associates, 37 Conn. Super. 90, 442 A.2d 471 (1982); State v. Felmet, 302 N.C. 173, 273 S.E.2d 708 (1981); Alderwood Associates v. Washington Environmental Council, 96 Wash.2d 230, 635 P.2d 108 (1981), or university campuses, Commonwealth v. Tate, 495 Pa. 158, 432 A.2d 1382 (1981), both of which are properties that the public is invited or encouraged to enter for the purpose of attending certain events. Indeed an important part of the rationale of the out-of-state cases is either the openness of the property, see Cologne v. Westfarms Associates, supra at 37 Conn.Super. at 107, 442 A.2d at 480; Commonwealth v. Tate, supra, 495 Pa. at 168, 432 A.2d at 1387, or the invitation to the public to enter, Alderwood Associates v. Washington Environmental Council, supra, 96 Wash.2d at 244, 635 P.2d at 116; but see Felmet, 302 N.C. 173, 273 S.E.2d 708 (1981).
The lack of authority as well as the fact that this is a court of original jurisdiction requires a comparatively strict reading and application of the three-part test established in Schmid. The facts of the instant case do not readily fit within the three-part test of Schmid; neither plaintiffs' nor defendants' position can be accepted entirely. Two of the factors militate toward plaintiffs while one militates for defendants. Nevertheless, plaintiff must prevail, not because of the number of factors weighing in plaintiffs' favor but because the overall approach and logic of Schmid so require. The property is not open to the public as Princeton University and Resorts International were and the public qua public is not invited to use the property. The three factors will be discussed in order.

(1) The Normal Use of the Property
The nature, purposes and primary uses of the property in question are to conduct private business usually by appointment *95 with customers and clients of plaintiffs' tenants. Such persons differ considerably from the public which patronizes shopping malls or casinos. The normal use of the property also differs from that of Princeton, whose university regulations encouraged dedication of the property to public discussion and discovery. Schmid, 84 N.J. at 564. In the instant case, the furtherance of private business goals, through private business contacts, is the normal use of the property. This is not public use. Although people enter the property to do business with plaintiffs and their tenants and are entitled to communicate with one another, such a situation greatly differs from defendants' claim that they and the general public have the right to enter the five properties to distribute literature.
The fact that a restaurant and delicatessan conduct business on the property is minor in relation to the overall "primary" use of the property. Such insignificant public use does not alter the court's view of the "normal" use of the property.

(2) The Public Invitation to Use the Property
The most important factor in the Schmid trilogy and the factor weighing most heavily in plaintiffs' favor is the extent and nature of the public's invitation to use the property. In both Schmid and Uston, as well as the several out-of-state cases cited above, public presence on the subject property was found to be "entirely consonant," ibid., with the use of the property.
During the trial defendants called an architect as an expert witness. The witness testified that although he would not advise building a wall around the complex due to its unattractive effects, a wall would render the property "private." Such a fence or wall built around the entire property would also include a gatehouse and security guard at the entrance. The following colloquy between defendants' counsel and the court illustrates defendants' position:
Mr. Zurofsky: I have conceded that one type of security method would do. One where every visitor is checked in and asked to identify themselves and say where they are going.

*96 The Court: You don't go as far as your expert to wall the place in?
Mr. Zurofsky: I think that to be absolutely certain, it would be nice if it was walled in. I don't believe he said that it was necessary. You asked him what he would recommend.
The Court: He said that it would require fencing to make it a private place architectually. Then I asked him the question, one foot high? He said no.
....
Mr. Zurofsky: If every visitor was required to pass a checkpoint and state what their business was and identify themselves, then I would say that that was making it very clear it is very private.
The court rejects defendants' position that to render the property private, at minimum a fence and guardhouse would have to be constructed. As a matter of public policy, no commercial property owner should be compelled to completely enclose its private property in order to keep out trespassers. Defendants argue that they and others have entered the property on numerous occasions without being stopped or questioned as to their destination. Nevertheless, as plaintiffs argue, such surreptitious entry by persons with knowledge of the prohibition against entry and with no legitimate business purpose, does not effect the nature or scope of plaintiffs' invitation and does not demonstrate that the properties are available for public use. The Court in Schmid has directed lower courts to consider the invitation to the public by the property owner. In the instant case any "invitation" by plaintiffs is limited at best to tenants, employees and invitees. The mere fact that defendants' entry was outside the scope of that invitation in no way expands that invitation to include the public qua public.
The signs at the entrances to the driveways and buildings, as well as plaintiffs' policy of allowing onto the property only tenants, employees and invitees, which is enforced to the best extent possible, demonstrate that the public is not invited onto the property. Argument by both sides as to the size or visibility of the signs is irrelevant as the fact of the existence of signs, or lack thereof, is not a dispositive factor in this decision, which looks to the totality of circumstances. Defendants' argument that the Meadowlands Corporate Center is open to the public *97 and has signs on the nearby highways advertising the center is not relevant, either, since plaintiffs are not seeking an injunction as to the entire center but only as to five office buildings and lots.
The testimony of defendants' expert warrants a brief discussion. The expert was an architect with both academic and field experience. He testified that based upon his experience and his examination of the property, including the use of a gateway effect formed by the vertical and horizontal lines of some of the buildings, the many open parking and grassy areas, the extension of the public transportation system into plaintiffs' property and lack of fences or guardhouses, seem to convey an invitation to the public from an architectual standpoint. While the expert's opinion was helpful regarding architecture, his opinion failed to convince the court that from a constitutional prospective the property is public. See Malnak v. Yogi, 440 F. Supp. 1284, 1326-27 (D.N.J. 1977), aff'd 592 F.2d 197 (3 Cir.1979). Indeed, the expert admitted that his opinion was solely from an architectural point of view. There is a lack of logic in burdening the owner of a building with an architect's concept or opinion of what the building is "saying" to the public. Whether there is an "invitation" to the public must be based upon the owner's intent taking all factors into consideration. When one purchases a building for private purposes, the seductive facade of the building should not be a major factor in the determination of a constitutional issue.

(3) Purpose of the Speech in Relation to Use of the Property
Plaintiffs misconstrue the third factor in Schmid by defining it far too narrowly. In effect, they argue that the activities of the defendant union are directly contrary to the interests of plaintiffs and their corporate tenants, who traditionally would prefer to avoid unionization of their office employees. Plaintiffs contend that the solicitation is "not related to the use of the property chosen by the owners or their tenants." Similar arguments could have been made in Schmid and Uston to the *98 effect that Princeton University had not chosen to have its property used by a member of the Labor Party to expound ideas and Resorts had not chosen to have its casino facilities used by a professional card counter who could beat the odds consistently. Such arguments beg the question.
Schmid directs this court to look to whether the expressional activities are discordant with the use of the property and not whether they are discordant with the owner's desires or interests. Schmid, supra, 84 N.J. at 565. In the instant case, the property is used to conduct private business activities by plaintiffs and their tenants. The conduct of such business requires the employment of office workers. Defendants seek to unionize the office workers employed by the occupants of the five buildings, purportedly to improve the wages and working conditions of those employees while working in the buildings. The relationship between the use and the expressional activities could not be closer and the court finds nothing incompatible with the two. The type of expressional activity at which the Schmid Court was aiming the third factor would be the situation where, for example, a group of political activists enter upon Bellemead's private property to protest American involvement in Central America. In that situation there would be no relationship between the use of the property and the expressional activity. In the instant case, however, the court finds the relationship to be clear.
Having found that the normal use of the property is private and that there is no invitation by plaintiffs to the public to enter upon and use the property, but that there is a close relationship between the use of the property and the expressional activity sought to be enjoined, the court is faced with a difficult decision. The Schmid Court did not advise as to the weight to be given each of the three factors. The court will issue an injunction, not because more factors weigh in favor of plaintiffs, but because the court finds that factor number two is the most important as expressing the constitutional policy behind the balance between expressional and private property *99 rights and because, overall, the properties are found to be private in nature. Plaintiffs have not opened their premises for public use as did the defendants in Uston, supra, 89 N.J. at 173; therefore, defendants herein have no right to enter the subject property to distribute leaflets. Should a tenant "invite" defendant or any union to solicit union affiliation in the common areas (hallways or lobby) adjacent to a tenant's demised area; or should the employees of any tenant themselves solicit union affiliation a new issue would arise. Such issue is neither raised or ruled upon.

B. The Anti-Injunction Act
Defendants claim that the New Jersey Anti-Injunction Act, N.J.S.A. 2A:15-51 through -58 (the act), prohibits any injunction issuing in this case. The act does not impair the inherent power of this court of chancery to issue injunctions, but rather prescribes the procedure to be utilized to obtain an injunction and to limit its scope. Westinghouse Electric Corp. v. United Electrified, Radio and Machine Workers, 139 N.J. Eq. 97, 111 (E. & A. 1946); Isolanite, Inc. v. United Electrical Workers, 132 N.J. Eq. 613, 619 (E. & A. 1944). Furthermore, the act does not preclude an injunction against unlawful activities of the union. See, e.g., Gotthelf Knitting Mills, Inc. v. Local 222, 93 N.J. Super. 263 (App.Div. 1966). Defendants mis-cite Independent Oil Workers v. Socony Mobile Oil Co., 85 N.J. Super. 453 (Ch.Div. 1964) as stating that only "violence, or the like" could warrant the court's issuing an injunction. In fact, the court in Socony stated that "there can be no injunction issued in a section 301 [of the National Relations Act] case unless there is violence, or the like." Id. at 461; emphasis supplied. The instant litigation is not a § 301 case and no such limitation exists.

III CONCLUSION
The court finds that defendants have committed continuing unlawful acts of trespass on plaintiff's property and *100 have failed to satisfy the Schmid balancing standard. Defendants have stated that they are likely to return to plaintiffs' property to distribute leaflets. This court has the power and duty to issue an injunction where a continuing trespass is threatened, as in this case. Jersey City Medical Center v. Halstead, 169 N.J. Super. 22, 25 (Ch.Div. 1979). Furthermore, since money damages will not compensate plaintiffs for the injury and since actions at law for each trespass would be futile at best, plaintiffs have and will continue to suffer substantial and irreparable injury to their property for which they have no adequate remedy at law. Finally, the court finds that if an injunction were not to issue herein, plaintiffs would suffer a greater detriment than that to be imposed on defendants. Plaintiffs did not seek an injunction against defendants' distributing leaflets within portions of the Meadowlands Corporate Center other than on plaintiffs' property. The public roads leading into and surrounding plaintiffs' property are therefore free game for pamphlet distributors. Although not as effective a method of achieving its goals, defendants are not without other methods of solicitation of prospective union members.
Plaintiffs' counsel is to submit a form of judgment.
NOTES
[1] Indeed, defendants do not raise the First Amendment as supporting their proposed right to distribute leaflets.