198 N.J. Super. 175 (1985)
486 A.2d 912
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ERIC GERSTMANN AND JOSEPH CHUMAN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1984.
Decided January 11, 1985.
*177 Before Judges PRESSLER, BRODY and HAVEY.
Andrew P. Napolitano, Special Assistant Prosecutor, argued the cause for appellant (Winne, Banta, Rizzi, Hetherington & Basralian, attorneys; Andrew P. Napolitano, of counsel; Kevin P. Cooke, on the brief).
Frank Askin argued the cause for respondents (Deborah Karpatkin, of counsel; Frank Askin, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
The State appeals from defendants' acquittal by the Superior Court, Law Division, on a trial de novo of charges of defiant trespass in violation of N.J.S.A. 2C:18-3. We have concluded that the State's prosecution of this appeal is barred by the double jeopardy interdiction of the Fifth Amendment of the Federal Constitution, and accordingly, we dismiss.
Defendant Eric Gerstmann was an independent candidate for the office of Bergen County freeholder in the 1982 general election. On October 30, 1982, he and his stepfather, defendant Joseph Chuman, were at the Bergen Mall, a large enclosed regional shopping center in Paramus, New Jersey, where they placed campaign leaflets under the windshield wipers of cars parked in the mall parking lot. They continued this activity after having been told to stop, first by mall security officers and then by the Paramus police who were summoned to the scene. Upon defendants' assertion of their constitutional right *178 to distribute campaign literature on the mall's private property and their disregard of the notices to stop, complaints were issued against them by the Paramus Municipal Court charging them with a violation of N.J.S.A. 2C:18-3. A mall officer was the complainant.
The offense of defiant trespass is defined by N.J.S.A. 2C:18-3b in pertinent suit as follows:
A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
(1) Actual communication to the actor; * * *.
Defendants did not urge at the municipal court hearing on the complaint that they had not committed the conduct constituting the charge against them. Rather, they asserted that Art. I, par. 6 of the New Jersey Constitution (1947) protected their expressional conduct because of the nature, scope and extent of the public's invitation to use the mall property. See State v. Schmid, 84 N.J. 535 (1980). In effect, this claim of constitutional right to engage in expressional activities on private property constituted an affirmative defense to the charge pursuant to N.J.S.A. 2C:18-3c(2)[1].
State v. Schmid, supra, 84 N.J. at 562, makes clear that the existence of a state constitutional right to engage in specific expressional activity on specific private property depends on the extent to which the property has been devoted to public use. This is ultimately a fact question requiring inquiry into and evaluation of such circumstances as
(1) the nature, purposes, and primary use of such private property, generally, its "normal" use, (2) the extent and nature of the public's invitation to use that property, and (3) the purpose of the expressional activity undertaken upon such *179 property in relation to both the private and public use of the property. [Id., 84 N.J. at 563]
Both parties, recognizing the underlying factual predicates of the Schmid analysis, adduced extensive proofs respecting the geographical, physical, commercial, cultural and social aspects of the mall operation. The municipal court judge made findings of fact based on these proofs in support of his conclusion that defendants had failed to meet the Schmid test. He accordingly convicted both,[2] imposing small fines. On their appeal to the Law Division, the trial judge, based on his de novo review of the record, was satisfied, as a matter of fact, that the proofs did meet the Schmid test. Accordingly, he ruled that "the defendants in this case are declared to be not guilty."
The State appealed and defendants interposed no challenge to its right to do so. We raised the issue of double jeopardy on our own motion, affording the parties the opportunity to brief and argue the question. We now dismiss the appeal on that ground.
It is axiomatic that an acquittal of criminal and quasi-criminal charges insulates the defendant from any further exposure to the criminal process based on the same conduct. That is the mandate of the Fifth Amendment. See State v. Barnes, 84 N.J. 362, 370 (1980), explaining that
This clause guarantees that the State shall not be permitted to make repeated attempts to convict the accused, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), quoted in United States v. Martin Linen Supply Co., 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642, 649 (1977) * * *.
Barnes further explains that the double jeopardy protection does not nevertheless "constitute a blanket prohibition of appeals by the State." Thus,

*180 Where the proceedings against an accused are terminated during trial on a basis unrelated to factual guilt or innocence, the State may appeal from a ruling of the trial court in favor of the defendant without offending the principles expressed in the double jeopardy clause. United States v. Scott, supra, 437 U.S. [82] at 99, 98 S.Ct. [2187] at 2198, 57 L.Ed.2d at [65] 79 [(1978)]. In United States v. Martin Linen Supply Co., supra, the Court stressed that what constitutes an acquittal by a trial court is not controlled by the form of the judge's action. "Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." 430 U.S. at 571, 97 S.Ct. at 1355, 51 L.Ed.2d at 651. [Id. 84 N.J. at 371]
Barnes applied these principles in a case in which an appeal was taken by the State from a termination of proceedings in defendants' favor by the Law Division on a trial de novo. The exclusive basis of the termination was the court's ruling, at trial, that the ordinance pursuant to which the municipal court charge was filed was facially unconstitutional. Barnes concluded that the double-jeopardy bar did not attach to that termination so as to bar the State's appeal because that basis of termination was unrelated to the factual guilt or innocence of defendant.
In so holding, the Court recognized that facial unconstitutionality is a challenge which is required to be raised by motion either before or after but not during trial. R. 3:10-3. It also recognized that the purpose of R. 3:10-3 is to protect the State's right to appeal that kind of dispositive legal determination from running afoul of double-jeopardy restraints. The technique by which the rule accomplishes that purpose is, of course, by keeping the dispositive legal issue totally separate and distinct from the trial of the factual issues which are determinative of guilt or innocence. See, e.g., State v. Barcheski, 181 N.J. Super. 34 (App.Div. 1981); State v. McKelvey, 142 N.J. Super. 259 (App.Div. 1976); Paramus v. Martin Paint, 128 N.J. Super. 138 (App.Div. 1974). Although the procedure of R. 3:10-3 had not been followed, Barnes nevertheless concluded that the failure of the parties to maintain the required separateness was not fatal to the State's right to appeal since the apparent trial was, in terms of function, impact and significance, *181 actually a hearing on the dispositive legal question.[3] In that circumstance, Barnes held, the declared acquittal of defendant by the Law Division was a misnomer since the termination was, in substance, not an acquittal but a dismissal appealable pursuant to R. 2:3-1(b)(1).
The State contends that the principles of Barnes are here applicable. Plainly they are not. The trial which took place here was a trial of factual guilt or innocence. Obviously, it matters not at all that the factual focus of the trial was on the factual viability of an affirmative defense rather than on the truth of the allegations of the complaint. It may well be that the affirmative defense here rested on constitutional underpinnings. But that circumstance did not render its presentation any less an integral part of the trial of guilt or innocence than is any other affirmative defense. In short, the success of the defense rested on proof of fact and was not subject to pre- or post-trial determination. Cf. R. 3:10-2, 3:10-3, 3:13-1(b). That factual issue was the essence of the trial itself. Consequently, when the Law Division found in defendants' favor on their defense, they were entitled not merely to a dismissal of the charges against them but to an acquittal.
Having concluded that the State is precluded from taking this appeal by double-jeopardy principles, we address defendants' contention that they have the right to waive that constitutional protection and elect to do so here. Their stated reason for this election is to obtain a decision by an appellate court declarative of the "role of the suburban shopping mall as a community gathering place and its obligations to accommodate *182 the exercise of full expression." They suggest that other judicial routes to this declaration are elusive.
In supporting the State's right to appeal their acquittal, defendants contend that the constitutional protection against double jeopardy is a personal right which is waivable by them. We do not disagree with this assertion as an abstract principle. We do, however, note that the matter of waiver is generally considered in situations in which a defendant who has been convicted seeks some kind of relief from the conviction by, for example, a post-trial motion, a direct appeal, or a post-conviction proceeding. That action on his part is ordinarily held to constitute a waiver permitting his retrial in the event he is successful. The State's right to appeal from judicial action favoring defendant is customarily predicated on its right to respond to action taken by the defendant other than at the trial itself which is intended either to avoid his being placed in jeopardy at all or to relieve himself from jeopardy after having been convicted. See State v. Sims, 65 N.J. 359 (1974). Our own research as well as that of counsel fails to disclose any reported decision in which a defendant who has been acquitted has waived his double jeopardy right for the purpose of permitting the State to appeal from that acquittal. We regard that waiver as no less anomalous than defendant's attempt himself to appeal his acquittal.
We are satisfied that in these circumstances defendants' desire to waive is not dispositive and that the option remains with us to permit waiver or not. We decline to permit the waiver here because of what we regard as compelling policy considerations. First, insofar as these defendants are concerned, the criminal proceedings against them terminated with their acquittal. Their interest in further proceedings does not go to the question of their guilt or innocence but rather to their hope for further and superfluous judicial vindication of their conduct. They are not, in our view, entitled to seek that vindication. From their point of view, there is no longer a *183 justiciable controversy respecting their guilt of these charges and, therefore, in a real sense, their interest in the appeal may be regarded as moot and what they seek is nothing more than an advisory opinion which it is not our adjudicative function to provide. More significantly, it is conceivable that an appellate court would disagree with the fact finding of the Law Division on the Schmid issue. If that were to be, these defendants, who are now quit of the criminal process and free of the risk of the whole complex of adverse consequences attendant upon a conviction, would be voluntarily subjecting themselves to the very consequences which their de novo appeal to the Law Division was intended to avoid and which it was successful in avoiding. Having been convicted by the municipal court and having then been vindicated in the Law Division, the defendants' interest vis-a-vis the criminal process must be deemed to have been completely and satisfactorily fulfilled. We conclude that the proper administration of the criminal justice system imposes upon the judiciary the obligation to bar acquitted defendants from voluntarily re-subjecting themselves to the risk of conviction of the precise charges of which they have already been acquitted.
We appreciate defendants' desire to obtain from an appellate court a reported judicial statement of broad application respecting the right of the public to engage in expressional activities on private property of particular categories. We are, however, satisfied that, despite their acquittal by the Law Division and the consequent preclusion of this appeal by the State, there remains a variety of civil procedural techniques available to them, including a declaratory judgment or injunction action against the specific complainant here or against the class represented by this complainant. Under all of the circumstances here, their agreement to prosecution of this appeal is an inappropriate vehicle for the accomplishment of those purposes.
The appeal is dismissed.
NOTES
[1] N.J.S.A. 2C:18-3 provides that, "It is an affirmative defense to prosecution under this section that:

* * * * * * * *
(2) The structure was at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the structure; * * *."
[2] A third defendant, Linda Chuman, was acquitted on the finding that she had not received prior notice to cease the trespass as required by N.J.S.A. 2C:18-3.
[3] The Court nevertheless made clear that with respect to the mandated pre- or post-trial motion raising the defense of unconstitutionality "* * * the bench and bar can scarcely expect future disregard of the Rules to be treated with a similar indulgence." 84 N.J. at 368.