262 N.J. Super. 607 (1993)
621 A.2d 553
STATE OF NEW JERSEY, PLAINTIFF,
v.
MATTHEW GUICE AND CHRISTOPHER SARE, DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided January 14, 1993.
*609 Marc J. Keane for plaintiff (Keane, Brady & Burns).
Andrew R. Tulloch for the defendants and Nicholas J. Miglino (pro hac vice).

OPINION
OLIVIERI, J.S.C.
This case is a trial de novo on the record. Defendants were convicted of criminal trespass. The primary issue involves the competing interests of private property rights and the expressional rights of freedom of speech and assembly.
Defendants were present on the campus of Stevens Institute of Technology on October 22, 1990. They set up a table outside the administration building, intending to distribute political literature and speak to students. They were informed by University police that they were on private property and were asked to leave. Defendants refused, claiming constitutional rights of free speech. They were subsequently arrested for criminal trespass under N.J.S.A. 2C:18-3.
The issues presented here were addressed by the New Jersey Supreme Court in State v. Schmid, 84 N.J. 535, 423 A.2d 615 (1980), appeal dismissed, sub nom. Princeton University v. Schmid, 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855 (1981). The Court in Schmid held that under the New Jersey Constitution a private property owner may be required to permit, subject to suitable restrictions, the reasonable exercise by individuals of the freedoms of speech and assembly. Id., 84 N.J. at 563, 423 A.2d 615. The Schmid decision seeks to balance *610 private property and individual expressional rights. The Court established a test[1] to determine when this constitutional obligation attaches. If there is any public use of the property, then a court will apply the Schmid accommodation test. Bellemeade Dev. Corp. v. Schneider, 196 N.J. Super. 571, 575, 483 A.2d 830 (App.Div. 1984), certif. denied, 101 N.J. 210, 501 A.2d 894 (1985).
The Schmid test is a sliding scale[2] test that chiefly measures the nature and extent of the public's invitation to use the property in question. At a certain point on the scale the private property is sufficiently devoted to public use to impose constitutional obligations on the private entity, assuming that the proposed use is not significantly discordant with the normal uses. Schmid, supra, 84 N.J. at 549, 563, 423 A.2d 615. If the obligation attaches, a court should then examine the reasonableness of the property owner's regulations limiting access to the property. Id. at 563, 423 A.2d 615. The property owner is entitled to establish reasonable time, place and manner rules but cannot otherwise forbid use of the property for First Amendment activities. Ibid.
The Schmid Court, and subsequent courts relying on Schmid, approach the test as a fact-based inquiry.[3] Defendants' *611 actions in the instant case parallel those in Schmid, but the site in the latter case was Princeton University. The Court found that Princeton clearly encouraged the use of the campus as a forum for free expression and debate, and concluded that Princeton was an open campus. Summing up its evaluation of the extent and nature of Princeton's invitation to the public[4], the Court found that "[t]he University itself has endorsed the educational value of an open campus and the full exposure of the college community to the "outside world," i.e. the public-at-large. Princeton University has indeed invited such public uses of its resources in fulfillment of its broader educational ideals and objectives." Id. at 565, 423 A.2d 615.
The Court in Schmid did not hold that all universities by definition are such forums. Even if Schmid is read as implying that a primary goal of educational institutions per se is the fostering of free inquiry and expression, and acknowledging that the defendants' actions in this case are not in conflict with this goal, there remains an analysis of the second element of the Schmid test: the nature and extent of the public's invitation. This was the element emphasized by the Court in its analysis in Schmid and this is where Stevens Institute diverges from Princeton University.
There is no evidence in the record that Stevens encourages a policy of openness and freedom with regard to the use of its facilities. Stevens does not open its campus to the public *612 to the degree that Princeton does. On the contrary, the record below reflects a deliberate policy to maintain the property as private. The gates are shut once a year to protect its private status. The property is enclosed, not geographically integrated with the town as are parts of Princeton University. Stevens does not allow outsiders on campus without sponsorship or other permission (except for local "Sunday strollers"). The public is invited on campus only for certain events (e.g. basketball games); limited commercial activities are permitted under the aegis of the college bookstore.
Private property does not "lose its private character merely because the public is generally invited to use it for designated purposes." Id. at 561, 423 A.2d 615, quoting Lloyd Corp. v. Tanner, 407 U.S. 551, 569, 92 S.Ct. 2219, 2229, 33 L.Ed.2d 131, 143 (1972).[5] The balancing test in Schmid does not look at whether the proposed use is contrary to the owner's interests and desires, but whether it is contrary to the property's normal use. Bellemeade Dev. Corp. v. Schneider, 193 N.J. Super. 85, 98, 472 A.2d 170 (Ch.Div. 1983). Stevens' actions were consonant with its interests, but also clearly evince a policy aimed at minimizing public use of the property.[6]
In Commonwealth v. Tate, 495 Pa. 158, 432 A.2d 1382 (1981), the Court held that under the Pennsylvania Constitution a private college could not arbitrarily prohibit persons from distributing political literature on campus, and found that the *613 defendants had an affirmative defense to a charge of criminal trespass. Id., 432 A.2d at 1387. The holding has been perceived as "rest[ing] heavily on the notion that although the university was private, it had created a privately owned forum open to the community at large for expressive activities." Radich v. Goode, 886 F.2d 1391, 1397 (3rd Cir.1989).
As in Schmid, the Court in Tate approached its analysis as a fact-based inquiry. It found that Muhlenberg College holds itself out to the public as a community resource and cultural center.[7] In both Schmid and Tate the Court focused on the extent and nature of the public's invitation to use the property[8] and found the campuses to be "open.".
This court finds that Stevens Institute issues only limited invitations to the public for specific purposes, and thus cannot be deemed an "open" campus. The facts in this case do not support the granting of constitutional rights to the defendants, unless one is prepared to say that the Schmid test as applied to private educational institutions in New Jersey will always find First Amendment obligations.
Because the Court in Schmid held that Princeton University could not prevail under the 3-prong test, it went on to review the reasonableness of the Princeton regulations. These facts *614 compel a contrary result, and so this court does not reach that analysis.

Defenses to criminal trespass
Defendants argue that even if their actions are not constitutionally protected, they have a statutory defense of mistake or ignorance of the law under N.J.S.A. 2C:2-4.
N.J.S.A. 2C:2-4c(2)[9] defines mistake of law as reasonable reliance on an official statement of law. Key to this section of the statute is the qualification of the official statement of law as "afterward determined to be invalid or erroneous".
The defendants rely primarily on Kratz v. Kratz, 477 F. Supp. 463 (E.D.Pa. 1979). Defendant Kratz was accused of violating his wife's civil rights by wiretapping the family phone. He claimed a marital exemption, relying on Simpson v. Simpson, 490 F.2d 803 (5th Cir.1974).[10] The Kratz court disagreed with the Fifth Circuit's holding but allowed that the defendants could have reasonably relied on the decision. Kratz, supra, 477 F. Supp. at 468-76.
Kratz is distinguishable from the instant case in several important particulars: 1) the statement of law relied on was clear;[11] 2) an attorney had researched the issue of law; 3) the court declined to follow the holding in the Simpson case, thus *615 meeting the statutory requirement of a mistaken or later overruled statement of law. In the instant case, the defendants relied upon a judicial opinion which presents a balancing test, not a definitive statement of law. There is no evidence that an independent attorney was consulted. Most importantly, the Schmid decision has not been determined to be invalid or erroneous.
Kratz itself relies on two U.S. Supreme Court cases, Raley v. Ohio, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959) and Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). In both cases there were clear statements of law which were later declared erroneous.[12] "Implicit in these two cases [Raley and Cox] is a holding that when individuals rely on an official but erroneous representation of law they cannot be expected to know the law is otherwise, and thus can have no notice or fair warning of what the law actually requires or proscribes." Kratz, supra, 477 F. Supp., at 482. It is this due process aspect of the mistake of law defense which counterbalances the strong public policy behind the maxim "ignorance of the law is no excuse." Exceptions are to be carved out only where "its application would be peculiarly unjust or counterproductive." U.S. v. Barker, 546 F.2d 940, 947 (D.C. Cir.1976).
The mistake of law defense is inappropriate here. The statute looks for an official statement of law which is later declared invalid or erroneous. Implicit in this formulation is the need *616 for a clear statement which is relied on by the defendant.[13] The holding in Schmid was that the defendants had rights of free speech and assembly on the Princeton campus because that campus was sufficiently "open" to require the private property owner to accord such rights. The Court laid down a test to determine when private property rights must give way to individual expressional rights. The Court did not hold that all universities are open.
The Schmid case is still good law. It has neither been overruled nor significantly modified. Relying on one's personal interpretation of judicial decisions does not constitute a defense of mistake of law.
N.J.S.A. 2C:2-4c(3)[14] defines a good faith defense based on ignorance of the law. The statute calls for "diligent pursuit by all means available" to ascertain the meaning of the law. The standard is "law-abiding and prudent person" and the proof standard is by clear and convincing evidence. These statutory standards reflect a strong policy against permitting *617 ignorance of the law as a justification, and place a heavy burden on the defendant to prove his defense.
The defendants declare that they have read Schmid. Their interpretation is undoubtedly the common one held by their organization. (Schmid himself was a member). They claim to have been successful in using the Schmid decision as a wedge to justify their presence on other campuses. The defendants admit to being aware that there is a test involved in Schmid but their actions did not reflect a legal understanding of this, nor any attempt to gain one. There is no evidence that they consulted with an independent attorney.
Even assuming that the honesty and good faith requirements of the statute are met (as the court below did), the defendants did not produce clear and convincing evidence sufficient to show diligent investigation of the law.[15] In Barker, supra, 546 F.2d at 955, the court proposes that "some knowledge of the law, verified by an independent and typically competent source, is required."[16] It has not been shown that the defendants pursued, diligently or otherwise, all means available to determine the law.
The defendants may not claim N.J.S.A. 2C:2-4c(3) as their defense.

Conclusion
The criminal trespass statute[17] mirrors Schmid in specifically allowing a defense if the actor is exercising constitutionally *618 protected rights of free speech and the property is significantly given over to public use. Stevens Institute does not rise to the level of significant public use as established in Schmid and developed in later cases. The defendants are therefore guilty of the petty disorderly persons offense of criminal trespass without recourse to ignorance or mistake of law defenses.
NOTES
[1] The Schmid test is a 3-prong one. The "standard must take into account: (1) the nature, purposes, and primary use of such private property, generally, its "normal use", (2) the extent and nature of the public's invitation to use that property, and (3) the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property." Schmid, supra, 84 N.J. at 563, 423 A.2d 615.
[2] Schmid, supra, 84 N.J. at 561, 423 A.2d 615, citing Marsh v. Alabama, 326 U.S. 501, 506, 66 S.Ct. 276, 278, 90 L.Ed. 265 (1946) "... as private property becomes ... committed either more or less to public use and enjoyment ... there is ... a counterbalancing between expressional and property rights".
[3] See, e.g., State v. Gerstmann, 198 N.J. Super. 175, 486 A.2d 912 (App.Div. 1985). "The existence of a state constitutional right to engage in specific expressional activity on specific private property depends on the extent to which the property has been devoted to public use; this is ultimately a fact question ..." Id. at 178, 486 A.2d 912.
[4] The opinion quotes the President of Princeton who had publicly called for "an environment conducive to the maximum freedom of thought and expression", including the exposure of students and faculty to a "wide variety of views on controversial questions." Schmid, supra, 84 N.J. at 565 n. 11, 423 A.2d 615. The Court also pointed to the fact that Princeton's regulations deal extensively with community use of the facilities, including the general availability of its grounds and walkways to the public. Id. at 565 n. 10, 423 A.2d 615.
[5] Cited also in Brown v. Davis, 203 N.J. Super. 41, 46, 495 A.2d 900 (Ch.Div. 1985), aff'd sub nom. State v. Brown, 212 N.J. Super. 61, 513 A.2d 974 (App.Div. 1986), certif. denied, 107 N.J. 53, 526 A.2d 140 (1986), to support a finding of no public right to access the common areas of an office complex.
[6] In Bellemeade Dev. Corp. v. Schneider, 193 N.J. Super. 85, 472 A.2d 170 (App.Div. 1984), the court examined the right of union organizers to solicit on the property of a private office park. The court found that the property was signed private and the landlord had a clear policy permitting only tenants, employees and invitees on the premises. Id. at 95, 472 A.2d 170. The court distinguished Schmid by finding that the property owner discouraged public use and sought to limit public access. Id. at 93, 472 A.2d 170.
[7] The Tate Court noted that the university has a post office, a cafeteria and a federal book depository library  all of which are open to the public. It also has a booth permanently set up for the sale of tickets to public events on campus. The college had no policy regarding off-campus visitors and "a lot of people walked the campus." Tate, supra, 432 A.2d at 1386-87.

The defendants in Tate were distributing leaflets protesting the speaker at a symposium which had been publicized as being open to the public; "every concerned citizen" was invited and encouraged to attend. Id. at 1384.
[8] New Jersey cases following Schmid in other contexts generally interpret its test as a totality of the circumstances test, and the extent of the public's invitation is implicitly or explicitly the key criterion. See, e.g., Bellemeade Dev. Corp. v. Schneider, 193 N.J. Super. 85, 95, 472 A.2d 170 (Ch.Div. 1983) "most important factor in the Schmid trilogy".
[9] The statute in pertinent part provides:

(c) A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense ... when: ... (2) The actor acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in ... (b) [a] judicial decision, opinion, judgment or rule ...
The defendant must prove a defense arising under subsection c. of this section by clear and convincing evidence.
N.J.S.A. 2C:2-4c(2).
[10] The attorney in the case overlooked a Pennsylvania precedent.
[11] Simpson held that a marital partner still living in the marital home can wiretap without being subject to civil liability.
[12] In Raley, the defendants had been informed by the Chairman of the Ohio Un-American Activities Committee that they had a constitutional privilege against self-incrimination. They were not told of an Ohio immunity statute which deprived them of the privilege. The Court found a due process violation.

In Cox, the police specifically told a group of demonstrators that they were permitted to picket in a certain place; they were later arrested there.
[13] See, e.g., Rice v. Rice, 951 F.2d 942 (8th Cir.1991) (reliance on case later reversed); Ostrosky v. State of Alaska, 913 F.2d 590 (9th Cir.1990) (reliance on lower court decision declaring a state statute unconstitutional); U.S. v. Albertini, 830 F.2d 985 (9th Cir.1987) (reliance on appeals court decision  same defendant, similar situation  later reversed by U.S. Supreme Court); U.S. v. Brady, 710 F. Supp. 290 (D.Colo. 1989) (judge specifically  and erroneously  told defendant that he could continue using hunting weapons even though convicted of a felony); People v. Dean, 73 Ill. App.3d 501, 29 Ill.Dec. 500, 392 N.E.2d 57 (Ill. App. 1979) (reliance on order enjoining enforcement of a statute).
[14] The statute in pertinent part provides:

c. A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense ... when: ... (3) The actor otherwise diligently pursues all means available to ascertain the meaning and application of the offense to his conduct and honestly and in good faith concludes his conduct is not an offense in circumstances in which a law-abiding and prudent person would also so conclude.
The defendant must prove a defense arising under subsection c. of this section by clear and convincing evidence.
N.J.S.A. 2C:2-4c(3).
[15] A number of the cases relying on Schmid have been decided in favor of the property owner. Even limited research into the issue would have brought this to light.
[16] The Barker court was addressing the classic mistake of law defense and was looking for objectively reasonable reliance under the circumstances. The court cited some examples in the mistake of law context: reliance on a magistrates approval for a search is permitted; a private person who is ordered to assist the police in an arrest may assume the arrest is valid. The defendants' personal interpretation of Schmid does not reach this level, and arguably the good faith defense raised here requires a somewhat stricter standard.
[17] See comment 4 to N.J.S.A. 2C:18-3.