686 A.2d 344

GUTTENBERG TAXPAYERS AND RENTPAYERS ASSOCIATION, THOMAS G. RIZZI AND BILL SCOULLOS, PLAINTIFFS–APPELLANTS, v. GALAXY TOWERS CONDOMINIUM ASSOCIATION AND BERNARD FURMAN, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 1, 1995—Decided June 13, 1995.

Before Judges SHEBELL, SKILLMAN and KLEINER.

*Frank Askin* argued the cause for appellants (*Constitutional Litigation Clinic, Rutgers Law School,* attorney; *Mr. Askin,* on the brief).

*Burton T. Cohen* argued the cause for respondents (*Okin, Cohen & Hollander,* attorneys; *Mr. Cohen,* on the brief).

PER CURIAM.

On April 4, 1994, plaintiffs filed a complaint in the Chancery Division and obtained an order for defendants to show cause why they should not be preliminarily and permanently enjoined from preventing plaintiffs from distributing pamphlets or flyers on defendants' property in anticipation of a school board election on April 19, 1994. A hearing on the order to show cause took place on April 15, 1994, at the conclusion of which the Chancery judge denied plaintiffs' application for a preliminary injunction and also dismissed the matter for failure to state a cause of action. On April 26, 1994, an order was entered in accordance with the judge's ruling. On June 7, 1994, plaintiffs filed a notice of appeal.

Defendant Galaxy Towers Condominium Association is a non-profit corporation that manages condominium property known as Galaxy Towers in Guttenberg. The association is governed by a nine member board of directors, elected by the owners of the

condominium units. All of the owners and directors are members of the association. Defendant, Bernard Furman, is the president of the board of directors.

Plaintiff Guttenberg Taxpayers and Rentpayers Association is a nonprofit, unincorporated association involved in political activities in Guttenberg. Plaintiff Thomas G. Rizzi is an association trustee, and plaintiff Bill Scoullos is a candidate for the Guttenberg School Board.

Galaxy Towers is a private, residential property made up of 1,075 condominium units located in three high-rise buildings, with related common elements, such as hallways, elevators, lobbies and a parking garage. Security personnel are employed by the condominium association to guard the lobby and garage. There is a shopping center located within the Galaxy Towers complex, known as the Galaxy Mall, owned by a third party. The mall is entirely open to the public and contains entrances to Galaxy Towers. There is a bus stop on the Galaxy Towers property for approximately 100 commuters who utilize a private bus service.

According to the certification of Sanford Simon, vice-president of the condominium association, the public is never invited into or permitted to enter Galaxy Towers without permission. Regulations applicable to all residents prohibit anyone from door-to-door canvassing or solicitation. These regulations also apply to outsiders, thereby preventing anyone from visiting or soliciting at any apartment unannounced or without the permission of an owner or resident. Simon certified that at no time has any political candidate, party or group been granted permission to distribute materials within Galaxy Towers.

The Town of Guttenberg is divided into six voting districts. Residents of Galaxy Towers constitute approximately thirty percent of the total number of registered voters in Guttenberg, and approximately eighty-seven percent of the registered voters in District Six. The polling place for this district is located in the Galaxy Mall.

The condominium association from time to time, in its regular newsletter and special notices and bulletins, endorses candidates for local elective office. The record is unclear as to whether the association distributes these materials by mail, door-to-door, or by leaving the material in a central location in the complex.[1]

In April 1993, plaintiff Rizzi sought the association's consent to distribute political literature door-to-door in Galaxy Towers by leaving materials under the doors of the units without disturbing the residents and also to leave such materials at the concierge desk in each lobby of the towers. The association denied this request. Rizzi made a similar request in December 1993, and was denied. After the taxpayers' association fielded a slate of candidates for the April 1994 school board election, it sought permission to place its material on tables in the lobbies and to go door-to-door. It appears that before the hearing on the order to show cause, the condominium association distributed a flyer to unit owners endorsing several candidates in the school board election.

The Chancery judge rejected plaintiffs' request for a preliminary injunction based on his application of the tripartite test enunciated by our Supreme Court in *State v. Schmid,* 84 *N.J.* 535, 423 *A.*2d 615 (1980), *appeal dismissed sub. nom Princeton University v. Schmid,* 455 *U.S.* 100, 102 *S.Ct.* 867, 70 *L.Ed.*2d 855 (1982). The judge found that the normal or primary use of the property was for residential purposes and that there was no indication that there had been any public invitation to use the property. He also found that this was not a case where plaintiffs had a "right of reply" because the distribution of election material by the condominium association was, in effect, a distribution by the unit owners themselves. He added that plaintiffs had a "reasonable alternative"—namely, distributing their literature by mail to the unit owners of the condominium.

---

[1] We were advised at oral argument by the attorney for the defendants that he understands distribution is by door-to-door delivery.

■ Although the school board election in question has already been held, the issues raised in this appeal will not be considered moot as they present matters of great public importance. *Oxfeld v. New Jersey State Board of Education*, 68 *N.J.* 301, 303, 344 *A.*2d 769 (1975). Further, the wrongs alleged are capable of repetition and would evade review if dismissed by us as moot. *Cain v. New Jersey State Parole Board*, 78 *N.J.* 253, 255, 394 *A.*2d 327 (1978); *Alderwood Assoc. v. Washington Envir. Council*, 96 *Wash.*2d 230, 635 *P.*2d 108, 110–11 (1981) (court addressed issue of the right of access to shopping malls for purpose of collecting petition signatures even though the initiative in question had already been voted on because of the continuing and substantial interest in a question of a public nature likely to recur, and the need for authoritative determination).

Plaintiffs claim that, under the test enunciated by our Supreme Court to ascertain the parameters of the right of free speech upon private property in New Jersey and under the common law, they should be given the opportunity to respond to electioneering by a residential association that represents approximately thirty percent of the municipal electorate. Plaintiffs maintain that the public interest in allowing citizens to be exposed to both sides of a political controversy is sufficient to allow them to go onto private property for the limited purpose of exercising their "right of reply," once that property is used by others for the same purpose. Plaintiffs ask that we reverse and instruct the trial court to enter a permanent injunction allowing them to enter defendants' property to respond to any election-related materials distributed on behalf of the condominium association.

Plaintiffs see their proposed activity as sanctioned by the common law principle of protecting important public activities from unreasonable restraints by private property owners, pointing to the holding in *State v. Kolcz*, 114 *N.J.Super.* 408, 276 *A.*2d 595 (Cty.Ct.1971). In that case, defendants were convicted of trespassing when they attempted to circulate a petition to change the form of the municipal government at a planned retirement com-

munity. Under the rules and regulations governing the community, solicitors and unauthorized persons were not to be admitted. *Id.* at 409–10, 276 *A.*2d 595. Defendants sought to ask the residents of the development to sign the petition by going door-to-door to the dwelling units. *Id.* at 410, 276 *A.*2d 595. Between twenty and twenty-five percent of the municipality's registered voters resided in the development. *Id.* at 411, 276 *A.*2d 595. Evidence was offered that a district committeeman of one of the major political parties, who was a resident of the development, engaged in door-to-door campaigning, and that other residents of the community who were political candidates were introduced at the community's social affairs. *Id.* at 410–11, 276 *A.*2d 595.

The court equated the retirement community to a municipality because "it is in many essential regards a self-sufficient community." *Id.* at 415, 276 *A.*2d 595. In the court's view, while the corporate officers of the community could speak for its residents on certain matters, they could not bar what they knew to be a bona fide political endeavor. *Id.* at 415–16, 276 *A.*2d 595. To hold otherwise, according to the court, would, in effect, create a political "isolation booth." *Id.* at 416, 276 *A.*2d 595.

Plaintiffs further assert that Galaxy Towers is the functional equivalent of a "company-owned town," as illustrated in *Marsh v. Alabama,* 326 *U.S.* 501, 66 *S.Ct.* 276, 90 *L.Ed.* 265 (1946). *See also State v. Shack,* 58 *N.J.* 297, 277 *A.*2d 369 (1971) (the ownership of real property does not include the right to bar access to governmental services available to migrant workers); *Laguna Publishing Co. v. Golden Rain Found.,* 131 *Cal.App.*3d 816, 182 *Cal.Rptr.* 813 (1982), *appeal dismissed,* 459 *U.S.* 1192, 103 *S.Ct.* 1170, 75 *L.Ed.*2d 422 (1983) (give-away newspaper excluded from a private, residential, walled community demonstrated unequal treatment as competitor allowed entry).

■ The issues presented are not capable of satisfactory review because of the absence of a proper factual record. Our Supreme Court in *Schmid, supra,* promulgated the following test:

> [U]nder the State Constitution, the test to be applied to ascertain the parameters of the rights of speech and assembly upon privately owned property and the extent to which such property reasonably can be restricted to accommodate these rights involves several elements. This standard must take into account (1) the nature, purposes, and primary use of such private property, generally, its "normal" use, (2) the extent and nature of the public's invitation to use that property, and (3) the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property. This is a multi-faceted test which must be applied to ascertain whether in a given case owners of private property may be required to permit, subject to suitable restrictions, the reasonable exercise by individuals of the constitutional freedoms of speech and assembly.
>
> [*Schmid, supra,* 84 *N.J.* at 563, 423 *A.*2d 615.]

Following the Chancery judge's ruling, our Supreme Court handed down its opinion in *New Jersey Coalition Against War v. J.M.B. Realty Corp.,* 138 *N.J.* 326, 650 *A.*2d 757 (1994). The Court held that the first two factors of the *Schmid* test—the normal use of the property and the nature and extent of the public invitation—are best considered together where "they are most closely interrelated." *Id.* at 357, 650 *A.*2d 757. These two factors, according to the Court, are primarily factual. *Ibid.* Similarly, with respect to the second factor, the Court stated:

> The factual issue is the overall nature and extent of the invitation to the public, not somehow restricted to the subjective "purpose" of defendants' uses, and certainly not limited to whether defendants extended an explicit invitation to plaintiff to speak. The issue is whether defendants' actual conduct, the multitude of uses they permitted and encouraged, including expressive uses, amounted to an implied invitation and, if so, the nature and extent of that invitation.
>
> [*Id.* at 356, 650 *A.*2d 757.]

The Court described the third factor as examining the "compatibility" of the free speech sought to be exercised with the uses of the property. *Id.* at 361, 650 *A.*2d 757. The Court pointed out that

> [t]he test to determine the existence of the constitutional obligation is multifaceted; the outcome depends on a consideration of all three factors of the standard and ultimately on a balancing between the protections to be accorded the rights of private property owners and the free speech rights of individuals to leaflet on their property.
>
> [*Id.* at 356, 650 A.2d 757.]

Thus, the applicable tests as announced by our Supreme Court are vitally dependent on the factual circumstances presented in each case. Consequently, we are satisfied that the important

constitutional issues presented here may not be decided without a full factual record being developed. The required balancing of property rights and free speech rights depends on a discreet consideration of the facts concerning the use of the property, as well as the practices of the condominium association with regard to its endorsement of political candidates and issues, and other activities deemed pertinent under the present case law.

We reverse the dismissal of plaintiffs' complaint and remand for a plenary hearing. We do not retain jurisdiction.