688 A.2d 156

THE GUTTENBERG TAXPAYERS AND RENTPAYERS ASSOCIA-TION, THOMAS G. RIZZI AND BILL SCOULLOS, PLAINTIFFS, v. GALAXY TOWERS CONDOMINIUM ASSOCIATION, AND BERNARD FURMAN, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Hudson County

Decided March 25, 1996.

*Frank Askin,* attorney for Plaintiffs (Rutgers Constitutional Litigation Clinic).

*Burton T. Cohen,* attorney for Defendants (Okin, Cohen & Hollander).

MARTIN L. GREENBERG, P.J.Ch.

In this action, the court is required to determine whether a condominium association that actively endorses candidates for political office by distributing campaign flyers to its residents, can deny access to its privately-owned property, to plaintiffs, a citizen group that wishes to engage in the same type of activity. Plaintiffs seek a declaratory judgment finding that defendants' actions prohibiting such access violate the New Jersey Constitution's guarantee of freedom of speech, *N.J.S.A.* Const. Art. 1, Par. 6 (1971), and permanently enjoining defendants from engaging in this type of activity.

On April 4, 1994, plaintiffs filed a complaint in the Chancery Division, and obtained an order to show cause why defendants should not be enjoined from preventing plaintiffs from distributing flyers on defendants' property in anticipation of a pending school board election.

A hearing on the order to show cause was held, at the conclusion of which, the court denied plaintiffs' application and dismissed the matter for failure to state a cause of action. Plaintiffs' filed a notice of appeal and the Appellate Division, finding that the important constitutional issues presented could not be decided without a full factual record, reversed the dismissal and remanded the matter for a plenary hearing, declaring that although the school board election had already been held, the issues in this matter would not be considered moot since they present matters of great public significance. *Guttenberg Taxpayers and Rentpayers Ass'n v. Galaxy Towers Condominium Ass'n,* 296 *N.J.Super.* 101, 108, 686 *A.*2d 344, 348 (App.Div.1995).

A bench trial was conducted by this court and the evidentiary record established the following:

The Galaxy Towers Condominium ("Galaxy") is located at 7000 Boulevard East, in Guttenberg, New Jersey. The Galaxy is composed of three residential towers, which collectively contain

1,076 residential units. When arriving by car, residents can use the private underground parking garage which leads directly to all of the three towers. When arriving on foot, residents can enter the towers through doors which are accessible from the public street. The Galaxy complex includes a mall, which is accessible to the public from the public street, as well as to residents from any part of Galaxy without going outside the complex. The mall contains various stores and services, as well as the polling booths for all federal, state and municipal elections.

Defendant Galaxy Towers Condominium Association ("Association"), of which defendant Furman is President, is charged with the management of Galaxy. The Association prohibits outside groups as well as residents of Galaxy from distributing flyers or handbills in Galaxy except that defendant Furman is authorized by Association by-laws to distribute Association approved flyers under the doors of Galaxy residents and to leave said flyers on the concierge desks. Prior to most, if not all, elections in Guttenberg, defendants have distributed a series of flyers supporting candidates endorsed by the Association for public office. In addition, the Association provides absentee ballot applications to its residents and organizes telephone squads to ensure Galaxy residents get to the polls on election day. The Association organizes regular voter registration drives and also provides poll workers on election day on which day Association volunteers distribute endorsed candidates "reminder" flyers to voters as they make their way to the voting polls in the mall below.

Plaintiff Guttenberg Taxpayers and Rentpayers Association was formed in 1992. It is an unincorporated association, whose primary purpose is to inform the taxpayers and rentpayers of Guttenberg about town politics and to elect its candidates to public office. Plaintiffs Rizzi and Scoullos are trustees of this Association, and were at various times candidates in Guttenberg elections. Plaintiffs have requested permission to distribute political materials to Galaxy residents in the same manner as the Association

does, subject to reasonable regulations imposed by the Association. The Association has denied all such requests.

The Town of Guttenberg is comprised of six voting districts. The Galaxy falls within District 6. The 1995 voter registration lists for Guttenberg contain a total of 3,822 registered voters. There are 1,048 voters residing within District 6, 932 of whom reside in Galaxy. Therefore, approximately 28% of the registered voters in Guttenberg reside in District 6, and more than 24% of Guttenberg's registered voters reside in Galaxy. Galaxy voters account for a significant proportion of the total votes cast in any given Guttenberg election. Election results in the recent past reveal that Association-backed candidates have consistently lost in Districts 1 through 5 by substantial majorities, but have nevertheless won their respective contests by carrying overwhelming majorities in District 6.

■ Under the New Jersey Constitution, the exercise of free speech is protected against unreasonably restrictive or oppressive conduct on the part of private entities. *State v. Schmid,* 84 *N.J.* 535, 423 *A.*2d 615 (1980), *appeal dismissed,* 455 *U.S.* 100, 102 *S.Ct.* 867, 70 *L.Ed.*2d 855 (1982). In *Schmid,* the Supreme Court established a three-part test to determine the parameters of the right to free speech upon privately-owned property and the extent to which access to private property can be restricted and still accommodate this right. *Id.* at 563, 423 *A.*2d 615. This test must take into account "(1) the nature, purposes, and primary use of such private property, generally, its 'normal' use, (2) the extent and nature of the public's invitation to use that property, and (3) the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property." *Id.* at 563, 423 *A.*2d 615.

The Supreme Court recently refined this test in *New Jersey Coalition Against War v. J.M.B. Realty Corp.,* 138 *N.J.* 326, 650 *A.*2d 757 (1994). The Court in *Coalition* determined that the first two elements of the *Schmid* standard are best considered together. *Id.* at 357, 650 *A.*2d 757. In addition, the determination of

whether a constitutional obligation to permit public access on the part of the private property owner exists, depends not only upon the *Schmid* factors, but ultimately upon a balancing of the right to free expression and the right to private property. *Id.* at 356, 650 *A.*2d 757.

■ Guided by these decisions, this court finds that plaintiffs must be granted the relief they seek.

The courts of this State that have applied the *Schmid* standard in favor of public access have required an initial determination that there is some type of public dedication of the property. *See Bellemead Dev. Corp. v. Schneider,* 196 *N.J.Super.* 571, 483 *A.*2d 830 (App.Div.1984), *cert. denied,* 101 *N.J.* 210, 501 *A.*2d 894 (1985); *State v. Brown,* 212 *N.J.Super.* 61, 513 *A.*2d 974, *cert. denied,* 107 *N.J.* 53, 526 *A.*2d 140 (App.Div.1986); *State v. Guice,* 262 *N.J.Super.* 607, 621 *A.*2d 553 (Law Div.1993). This court finds that in this case, this factual predicate is met.

Galaxy is routinely used for political campaigning. During election time in Guttenberg, distributing political leaflets and handbills is part of the normal, everyday activities that occur on the property. The residents of Galaxy have come to expect as a matter of course, that during election time there will be a flurry of election materials placed under their doors, and available in the common areas of their residential development.

The activities engaged in by the Association are similar in nature to what would be expected from a political organization, from its endorsement of candidates to its get-out-the-vote drives during election time. This court finds that there consistently has been at election time, significant dedication of this property from private to political and thus public use.

Political speech "occupies a preferred position in our system of constitutionally-protected interests." *State v. Miller,* 83 *N.J.* 402, 411, 416 *A.*2d 821 (1980), *Murdock v. Pennsylvania,* 319 *U.S.* 105, 115, 63 *S.Ct.* 870, 876, 87 *L.Ed.* 1292 (1943). Since the Association has made distribution of political flyers a normal use of its

property, any invasion of privacy by allowing similar distribution of plaintiffs' literature, subject to reasonable regulations imposed by defendants (conceivably including requiring such distribution by defendant's agents), would be minimal and would not grant more access than necessary to serve a significant constitutional purpose.

The conclusion reached in this matter is extremely fact sensitive. Because the nature of the private property at issue here is quite different from the type of property at issue in *Schmid* or *Coalition*, this court draws guidance from *State v. Kolcz*, 114 *N.J.Super.* 408, 276 *A.2d* 595 (1971). *Kolcz* involved Rossmoor community, a "planned retirement village," that in many ways resembles the self-enclosed environment that exists at Galaxy. The corporate officers of the Rossmoor community prohibited people from soliciting door-to-door. *Id.* at 411, 276 *A.2d* 595. The defendants in *Kolcz* were members of a citizen group that were seeking signatures on a political petition, but who were denied admittance into Rossmoor. *Id.* Noting that "there is no substitute for door-to-door communication," *Id.* at 413, 276 *A.2d* 595, the court determined that the corporate officers could not "bar what it knows to be a *bona fide* political endeavor." *Id.* at 416, 276 *A.2d* 595. The court went on to hold that

[a]lthough the guaranties of free speech and free press will not be used to force a community to admit peddlers or solicitors of publications to the homes of its residents ... such guaranties should be used to insure that each individual alone decides what political and religious information he wishes to receive.... This court does not wish to open wide the gates of Rossmoor and thereby allow anyone to come in at anytime, for any purpose. Nevertheless, this court feels compelled to hold ajar the gates of Rossmoor under the present circumstances. To hold otherwise would in effect, create a political 'isolation booth'.

*Id.* at 599–600, 276 *A.2d* 595.

This court finds that in this case, plaintiffs have no adequate meaningful substitute for "door-to-door" communication with the residents of Galaxy. Defendant's contention that plaintiff is able to carry a campaign to the residents by mail and leafleting on public property and at the public voting place (to which plaintiff replies it is not financially able effectively to mail in time to

respond to defendant's last minute campaign tactics and is unable to obtain access to a meaningful number of residents on "the street"), misses the point. A level playing field requires equal access to this condominium because it has become in essence a political "company town" (a more constitutionally impaired status than the Rossmor political "isolation booth") in which political access controlled by the Association is the only "game in town". Distribution of plaintiffs' literature in essentially the same manner in which the Association's literature is distributed is the only effective way plaintiffs can be guaranteed equal access to the registered voters in Galaxy, who represent a substantial percent of the registered voters of Guttenberg.

In light of the above conclusion, it is unnecessary to consider whether defendants' activities have resulted as a matter of law in an "implied invitation" to plaintiffs to respond.

In view of the foregoing, judgment shall be entered against defendants and in favor of plaintiffs.

Counsel shall submit an appropriate order.