885 A.2d 496 (2005)
381 N.J. Super. 241
Chandur GULRAJANEY, Plaintiff-Appellant,
v.
Stacey PETRICHA, Barbara Tokay, Pooja Dhawan, Pat Dhawan and Gina Riggi, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 2005.
Decided November 14, 2005.
*499 Robert E. Margulies, Jersey City, argued the cause for appellant (Margulies, Wind & Herrington, attorneys; Frank E. Catalina, Peekskill, NY, on the brief).
Corinne M. Mullen argued the cause for respondent Stacey Petricha.
Cathy C. Cardillo argued the cause for respondents Barbara Tokay and Gina Riggi.
Stanley R. Bright argued the cause for respondents Pooja Dhawan and Pat Dhawan (James D. Butler, Jersey City, attorney; Mr. Bright, on the brief).
Before Judges STERN, PARKER and LEVY.
*500 The opinion of the court was delivered by
LEVY, P.J.Ch. (temporarily assigned).
Plaintiff Chandur Gulrajaney appeals from two orders granting summary judgment in favor of defendants dismissing his complaint seeking damages for defamation. The first order, entered February 20, 2004, granted motions in favor of defendants Barbara Tokay, Gina Riggi, and Pat and Pooja Dhawan. The second order, entered May 12, 2004, granted summary judgment in favor of defendant Stacey Petricha. Having carefully reviewed the evidence in the light most favorable to plaintiff, we affirm both orders for the following reasons.
The alleged defamatory statements were contained in an E-mail forwarded on March 15, 2002 by Petricha to Tokay, plaintiff's opponent in a March 20, 2002 run-off election for a seat on the nine-member board of directors (Board) of the Galaxy Towers Condominium Association (Association). The Association manages Galaxy Towers Condominium (Galaxy), in Guttenberg, New Jersey. Galaxy is comprised of five buildings, three of which are residential towers containing more than 1,000 units and housing some 2,500 residents. Galaxy features its own shopping mall, theater and parking garage. Board members are elected for three-year staggered terms.
The E-mail that sparked the litigation read as follows:
My husband and I are owners in Tower-I and we are eager to give you our vote on Wednesday. Because of our work situations, we have not been very involved socially in the Galaxy Community, therefore, spreading the word in your favor would be difficult for us. However, if you come across anyone who seems uncertain of the importance of casting his or her vote for you, please feel free to forward them this message.
We purchased our apartment from your opponent, Chad, and it was a very unpleasant and frustrating experience. He had agreed to make repairs to the apartment (fix broken windows, leaks in bathroom, etc.) prior to our closing. These agreements were even given to us in writing. Because Chad worked for Riverfront Realty, he was aware of our renting situation, and knew that we had given up our rental apartment. Despite his written agreement with us, he refused to make these repairs and told us that if we wanted the apartment, we would simply have to take it "as is". He even refused to allow us to investigate the bathroom leakage by yelling and screaming along with his father, and throwing us out of the apartment on the day of our closing. In addition, he had been residing in the apartment and left it filthy!
To avoid the expense and inconvenience of having to move out of the complex, we went through with the purchase. Instead of the joy that most couples feel at the purchase of their first home, we felt frustrated and bitter.
I am sure that Chad knew what he was doing from a legal standpoint, but our dealings with him showed him to be dishonest and lacking in integrity. Our neighbor had a similar experience with him and she's heard complaints from others as well.
We were horrified to hear that Chad could possibly get himself a position on the board. Throwing out all his ideas and solutions to the residents of the Galaxy, and trying to impress them with his business savvy, does not hide the fact that he is not a man of good character. Judging from the unwise decisions he made on renovating his own apartment, *501 and its lack of upkeep, we don't feel that he would be an ideal person to make these types of decisions on a larger scale. We are certain that his motivations stand to benefit his own investments, and not the Galaxy community as a whole.
Because the last thing that the Galaxy needs is more dishonesty, we would hope that you will do all you can to beat him in this election. As stated on your flyer, there are many problems that need to be resolved, but if they are not resolved in an open and honest manner by open and honest people, the Galaxy community will only continue to go down-hill.
Best of Luck to you,
Stacey Petricha
The written agreement to which the E-mail referred, which required plaintiff to make certain repairs, never became binding on the parties, as it was subject to attorney review and had been rejected by Petricha's attorney, who declared it null and void. Petricha's attorney rejected the contract in a letter that also offered to reinstate the agreement if noted changes were agreed upon, including a provision for a credit to the Petrichas at closing if the required repairs were not done. However, plaintiff, a licensed realtor, would not agree to the changes. His attorney crossed out most of them, agreeing on behalf of plaintiff to make only one repair, to fix a water leak in the bathroom. Thus, with the one exception, the Petrichas were advised, if they planned to proceed, they were now required to take the unit "as is." With reluctance, they agreed to go forward.
The circumstances surrounding plaintiff's refusal to do repairs for which he had previously accepted responsibility were not known to Petricha at the time she sent the E-mail. As the trial court specifically found based on uncontested facts, because her husband had handled the contract negotiations, Petricha was unaware of her attorney's rejection of the agreement and, therefore, was unaware of plaintiff's right, in response, to refuse to do the previously agreed upon repairs.
On the day of the closing during a walk-through inspection, the Petrichas noticed a leak in the bathroom. Although plaintiff was not present, maintenance personnel created a hole in the bathroom wall in order to locate the source of the leak. It was at that point that plaintiff arrived, became quite angry and demanded that everyone leave. Notwithstanding that event, the closing took place as planned.
Given her understanding of the facts surrounding plaintiff's change in position disavowing his responsibility to do repairs in connection with the sale of the condominium[1], Petricha, upon learning of plaintiff's candidacy for the Board, sent the critical E-mail to Tokay. Tokay, in turn, sent it to her supporters, Riggi and Pat and Pooja Dhawan, with the goal of obtaining more information about Petricha and the incident between her and plaintiff.
Riggi subsequently contacted Petricha, who expressed an interest in notifying others about her experience. Riggi recommended posting the E-mail on two Galaxy message boards, on-line message centers *502 with accessibility limited to Galaxy unit owners and residents. Petricha had not yet been screened and qualified as an owner for use of the message boards, but wanted the information published to the Galaxy community prior to the election. Therefore, she requested Riggi to post the E-mail for her. Riggi did so a few days later.
Deposition testimony of a Galaxy resident indicated that a flyer containing the E-mail was also distributed in the Galaxy lobby by "three [or] four girls." The Dhawans acknowledged that they also handed out campaign flyers in the lobby, but did not recall handing out flyers that contained the E-mail. Furthermore, they testified that they questioned persons before handing them flyers and only gave flyers to unit owners that planned to vote in the election.[2]
Upon seeing the E-mail, plaintiff posted a response on-line alleging the facts in the E-mail were false and threatening legal action. In addition, he posted copies of the real estate documents from the transaction with the Petrichas and his attorney sent a cease and desist letter to Petricha warning her to stop disseminating the information and advising her a lawsuit would be initiated.
Plaintiff ultimately succeeded in the election, but claims he lost real estate commissions and listings as a result of the E-mail. Consequently, he initiated this action on April 15, 2002. Tokay filed a motion to dismiss for failure to state a claim upon which relief could be granted. That motion was denied. Likewise, motions for summary judgment filed by Tokay and the Dhawans were denied. However, motions for reconsideration filed by Tokay and the Dhawans were later granted by Judge Arthur N. D'Italia, who concluded that, while the E-mail was defamatory, plaintiff was, in light of his participation in the election, a limited public figure in the condominium community. Therefore, he was required, but failed, to produce substantial evidence that Tokay, Riggi or the Dhawans were motivated by actual malice or that they abused a conditional privilege that protected them from liability for publishing information under the reasonable belief that persons with a common interest in the subject matter were entitled to know the information published.
Judge D'Italia had at first denied Petricha's motion for summary judgment, because he felt a jury could find she acted with reckless disregard of the truth that plaintiff could not be held to his promise to do repairs after her attorney cancelled the contract. However, he later granted Petricha's motions for reconsideration and summary judgment, after it was established that, at the time she sent the E-mail, she was not aware that the contract had been cancelled.
Plaintiff argues on appeal (1) that he was not a limited public figure with respect to the defamatory statements about him; (2) there was sufficient evidence of actual malice with respect to Petricha to have allowed the defamation case against her to proceed to trial; and (3) Tokay, Dhawan and Riggi abused whatever qualified privileges they may have had by over publishing the defamatory information. We reject each of these arguments.
An order granting summary judgment is appropriate

*503 if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact. The court shall find the facts and state its conclusions in accordance with R. 1:7-4.
[R. 4:46-2(c).]
In reviewing an order granting summary judgment, we are bound by the same standard as the trial court. Prudential Property & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998).
First, we decide "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." [Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146 (1995).] Then, "if there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a `genuine' issue of material fact for purposes of" summary judgment. Ibid. Thereafter, we must then determine whether the Law Division's legal conclusions were correct. Prudential Property & Cas. Ins. Co. v. Boylan, supra, 307 N.J.Super. at 168-74, 704 A.2d 597.
[Groen, Laveson, Goldberg & Rubenstone v. Kancher, 362 N.J.Super. 350, 358, 827 A.2d 1163 (App.Div.2003) (quoting Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146 (1995)), certif. denied, 178 N.J. 35, 834 A.2d 407 (2003).]
In this case, we conclude that summary judgment was appropriate and that Judge D'Italia's legal conclusions were correct. His first conclusion was that the statement in the E-mail that the Petrichas' dealings with plaintiff "show him to be dishonest and lacking in integrity" was defamatory. We agree. "As a general rule, a statement is defamatory if it is false, communicated to a third person and tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him." Lynch v. New Jersey Educ. Ass'n, 161 N.J. 152, 164-65, 735 A.2d 1129 (1999) (citing Restatement (Second) of Torts §§ 558, 559 (1977)). The statement that plaintiff was dishonest and lacking in integrity was communicated to third persons. Furthermore, it is self-evident that the statement, if believed, could lower plaintiff's reputation in the community. Whether the statement was false is a more difficult question.
The statement that plaintiff was dishonest and lacking in integrity was an expression of opinion. "Statements of opinion, like unverifiable statements of fact, generally cannot be proved true or false. Opinion statements reflect a state of mind." Lynch, supra, 161 N.J. at 167, 735 A.2d 1129. Here, however, Petricha attempted to support the opinion with facts. Thus, to support the conclusion that plaintiff was dishonest and lacking in integrity, Petricha cited the alleged fact that he had reneged on a written agreement to do certain repairs in a unit he was selling. In addition, Petricha stated in the E-mail that a neighbor had "a similar experience" *504 with plaintiff and that there were "complaints from others as well."
The implication of these factual allegations is that they evidence dishonest conduct and provide the basis for the conclusions regarding honesty and integrity. Opinion statements may lead to liability for defamation when they "imply false underlying objective facts." Ibid. While plaintiff did, in fact, change his position and refuse to do repairs he had previously agreed to do, the implication that he had no right to do so was not true.[3] Plaintiff clearly had a right to change his position and refuse to do repairs after Petricha's attorney rejected the contract and declared it null and void. Moreover, Petricha's reference to others having similar experiences implied that there was additional factual support for the conclusion that plaintiff was dishonest and lacked integrity. Those facts, however, were not supplied.
"Evaluation of content involves consideration not merely of a statement's literal meaning, but also of the fair and natural meaning that reasonable people of ordinary intelligence would give it." Ibid. (citation omitted). Evaluating the content of the E-mail as a whole, we conclude that the factual basis for the opinion was at least misleading and could, with respect to the allegation of similar experiences of neighbors, be determined to be false. Therefore, for the purpose of consideration of summary judgment, we accept that the E-mail was defamatory.
Given the conclusion that the E-mail was defamatory, we must next decide whether plaintiff is to be considered a public figure. A public official may only recover for defamatory statements made relating to official conduct if "actual malice" can be proven. New York Times Co. v. Sullivan, 376 U.S. 254, 279, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964). "Actual malice" is established by proving the defendant disseminated the information with knowledge that it was false or with reckless disregard for whether it was false or not. Id. at 280, 84 S.Ct. at 726, 11 L.Ed.2d at 706.
Public figures are those who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." Gertz v. Robert Welch, Inc., 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789, 808 (1974). The basis of this definition was the notion that such persons "usually enjoy significantly greater access to the channels of effective communication" and, therefore, are able to more easily defend themselves. Id. at 344, 94 S.Ct. at 3009, 41 L.Ed.2d at 808. Thus, they may be justly burdened with the actual malice standard. Id. at 344-45, 94 S.Ct. at 3009, 41 L.Ed.2d at 808.
The classification of a person as a public or private figure is a question of law to be decided by the motion judge. Hill v. Evening News Co., 314 N.J.Super. 545, 554-55, 715 A.2d 999 (App.Div.1998). We find plaintiff's argument that he was inappropriately classified as a public figure *505 to be without merit. He argues that Galaxy is a private development with a private governing body and, as a candidate for the Board, he is a private figure. We disagree.
In Verna v. The Links at Valleybrook Neighborhood Ass'n, Inc., 371 N.J.Super. 77, 97, 852 A.2d 202 (App.Div.2004), we held that a candidate for a planned unit development association's board of directors was a limited public figure, because "[a]s a candidate for election to the association's board of directors, plaintiff thrust himself into a spotlight which justified viewing him as a public figure for the limited purpose of his candidacy."
The rationale of Verna is directly applicable here. Both Verna and this case involve alleged defamatory communications about candidates for the governing bodies of communities. "Political speech `occupies a preferred position in our system of constitutionally-protected interests.' State v. Miller, 83 N.J. 402, 411, 416 A.2d 821 (1980), Murdock v. Pennsylvania, 319 U.S. 105, 115, 63 S.Ct. 870, 876, 87 L.Ed. 1292 (1943)." Guttenberg v. Galaxy Towers, 297 N.J.Super. 404, 409, 688 A.2d 156 (Ch.Div.1996). We recognize that the services provided in a planned unit development may be different than those provided in a condominium, and, therefore, that the issues over which the board of directors in Verna exercised control may have been different than those over which the Board would likely exercise control here. However, the significance of board of director elections to members of both communities is very much the same. Indeed, the record indicates that the Galaxy election was hotly contested and that owners and residents had a keen interest in its outcome and the individuals who would exercise control over the community as a result.
Thus, the holding in Verna is instructive. "Public discussion about the qualifications of those who hold or wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment...." Verna, supra, 371 N.J.Super. at 96, 852 A.2d 202 (quoting Damon v. Ocean Hills Journalism Club, 85 Cal.App.4th 468, 102 Cal.Rptr.2d 205, 213 (2000)). In Verna, to protect voters' rights to publicly discuss qualifications of candidates, we concluded that the plaintiff was a public figure for the limited purpose of his candidacy. Because we view the need to safeguard the right to public discussion of the qualifications of candidates to be the same regardless of whether the election is for membership on a condominium board or the board of a planned unit development, we reach the same conclusion here with respect to plaintiff. Therefore, in order to recover damages for defamation, he must show by clear and convincing evidence that Petricha was motivated by actual malice.
In Verna, supra, we discussed the actual malice standard which must be applied to a limited purpose public figure:
The actual malice standard requires that a plaintiff demonstrate, by clear and convincing evidence, that the alleged defamatory statement was made with knowledge of its falsity or with reckless disregard for the truth. Lynch v. N.J. Educ. Ass'n, [supra,] 161 N.J. 152, 165, 735 A.2d 1129 (1999); Standridge v. Ramey, 323 N.J.Super. 538, 544, 733 A.2d 1197 (App.Div.1999). To prove a statement was made or published with reckless disregard for the truth, a plaintiff must show that the statement was made with a "high degree of awareness of [its] probable falsity," Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125, 133 (1964), or with "serious doubts" as to the truth of the publication, St. Amant v. Thompson, 390 U.S. *506 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968). To be actionable, "the recklessness in publishing material of obviously doubtful veracity must approach the level of publishing a `knowing, calculated falsehood.'" Lynch, supra, 161 N.J. at 165, 735 A.2d 1129 (quoting Lawrence v. Bauer Publ'g & Printing Ltd., 89 N.J. 451, 466, 446 A.2d 469 (1982)).
[371 N.J.Super. at 95, 852 A.2d 202.]
The actual malice standard may be satisfied upon proof "the publisher fabricates a story, publishes one that is wholly unbelievable, or relies on an informant of dubious veracity, or purposely avoids the truth." Lynch, supra, 161 N.J. at 165, 735 A.2d 1129. "`[T]he court should grant summary judgment dismissing the complaint if a reasonable jury could not find that the plaintiff had established actual malice by clear and convincing evidence.'" DeAngelis v. Hill, 180 N.J. 1, 12, 847 A.2d 1261 (2004) (quoting Lynch, supra, 161 N.J. at 169, 735 A.2d 1129).
Judge D'Italia accurately determined that plaintiff had not met the burden of proving "actual malice." In doing so, he relied upon an undisputed affidavit from Petricha stating that, at the time she wrote and distributed the E-mail, she was not aware her attorney cancelled the original contract. Her husband handled negotiation of the real estate transaction and she was not told about the rejection letter sent by her attorney. Furthermore, no evidence was presented to show that her statements with regard to the similar experience of neighbors were not made in good faith based on what she was told. Given this record, there is no basis for concluding that Petricha made statements knowing they were false or with reckless disregard for the truth. Therefore, actual malice was not established.
Judge D'Italia also found that defendants were entitled to a conditional or qualified privilege because they, themselves, had an interest in the subject matter of the communication and distributed it to individuals having a corresponding interest.[4] We agree.
"[A] communication `made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable.'"
[Bainhauer v. Manoukian, 215 N.J.Super. 9, 36, 520 A.2d 1154 (App.Div.1987) (quoting Chief Justice Weintraub quoting Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 375, 149 A.2d 193 (1959)).]
A conditional or qualified privilege is limited as the title suggests. If the privilege is abused, it will no longer protect the publisher *507 against a claim of defamation. Abuse occurs if
(1) the publisher knows the statement is false or the publisher acts in reckless disregard of its truth or falsity; (2) the publication serves a purpose contrary to the interests of the qualified privilege; or (3) the statement is excessively published.
[Govito v. W. Jersey Health Sys. Inc., 332 N.J.Super. 293, 312, 753 A.2d 716 (App.Div.2000) (quoting Williams v. Bell Tel. Labs. Inc., 132 N.J. 109, 121, 623 A.2d 234 (1993) (citations omitted)).]
"Excessive publication occurs where defendants could have no reasonable belief that the publication was an appropriate means of communicating the defamatory matter to another to whom the publication is privileged." Feggans v. Billington, 291 N.J.Super. 382, 399, 677 A.2d 771 (App.Div.1996); Gallo v. Princeton Univ., 281 N.J.Super. 134, 143-46, 656 A.2d 1267 (App.Div.), certif. denied, 142 N.J. 453, 663 A.2d 1359 (1995).
Judge D'Italia properly concluded that the qualified privilege applied to these defendants and that they did not abuse it. For the reasons set forth above, there is no basis to conclude that defendants knew that any information in the E-mail was false or acted in reckless disregard for its truth or falsity. As owners or residents of units in Galaxy, defendants, as well as those to whom they distributed the E-mail, clearly had an interest in the qualifications of candidates for the Board. Therefore, the privilege applied. Moreover, it is clear from the E-mail itself, as well as the facts and circumstances surrounding its publication and distribution, that Petricha's purpose in sending the communication, and the remaining defendants' purpose in distributing it, was to address plaintiff's qualifications as a candidate for office. Therefore, there was no abuse of the privilege.
Finally, we find no merit to the argument that the privilege was abused by over publication. We conclude, to the contrary, that in order to reach potential voters in Galaxy, it was reasonable to post the E-mail using the limited-access on-line message center and to distribute flyers in the lobby.
For the above reasons, we affirm.
NOTES
[1] Petricha's opinion of plaintiff was also based upon prior dealings with him in which, she claimed, plaintiff misrepresented himself as the owner of a unit Petricha and her husband wanted to rent and failed to identify himself as a licensed realtor. According to Petricha, plaintiff finally admitted that he was not the owner of the unit in question and then tried to steer them to another unit that he did own. These allegations were not published in the E-mail.
[2] In his brief, plaintiff contends that the flyer was "posted" in the lobby where anyone who came into the building could see it. However, he provides no citation to the record to support this statement. The record supports the motion judge's finding that the E-mail was "printed as a flyer and distributed in the lobby. . . ."
[3] One might question the existence of such an implication in light of the fact that Petricha prefaced her opinion about plaintiff's dishonesty and lack of integrity with the acknowledgment that she was "sure that [he] knew what he was doing from a legal standpoint...." One might argue that this was an admission that plaintiff had a legal right to change his position and that, in view of that admission, Petricha's conclusion that exercising the right was dishonest and showed a lack of integrity was simply an illogical opinion. We conclude, however, that, taken as a whole, the E-mail implied that plaintiff breached his written agreement without legal justification.
[4] It should be noted that applicability of a conditional or qualified privilege is not dependent upon a finding that the plaintiff is a public figure. "[A] qualified privilege exists because the legitimate public or private interest underlying the publication outweighs the important reputation interests of the individual." Erickson v. Marsh & McLennan Co., 117 N.J. 539, 564, 569 A.2d 793 (1990) (citation omitted). Therefore, even if it had been determined that plaintiff was not a limited public figure, defendants would still have been able to claim the protection of the privilege. On the other hand, had plaintiff been able to establish that defendants knew statements they distributed were false or acted in reckless disregard of their truth or falsity, or intentionally over published the statements, he would have established both abuse of the privilege as well as actual malice and would have been able to pierce the protections of both the privilege and the limited public figure doctrine.